[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13946

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00025-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WARD FRANKLIN DEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 25, 2007)

Before BIRCH, FAY and CUDAHY,* Circuit Judges.

_____

*Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

PER CURIAM:

Ward Franklin Dean appeals his conviction and sentence for income tax evasion, 26 U.S.C. § 7201, and attempted interference with the administration of internal revenue laws, 26 U.S.C. § 7212(a). Dean challenges his conviction on a number of grounds, arguing that there was insufficient evidence to convict him of the attempt at obstruction and that the jury received erroneous or misleading instructions. Dean also argues that the district court failed to comply with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, by denying him an opportunity to inspect the Grand Jury list and failing to comply with the District Court Jury Plan.

Dean challenges the constitutionality of his sentence as well, arguing that the court improperly applied the holding in *United States v. Booker*, 543 U.S. 220 (2005) to his sentence, which addressed pre-*Booker* conduct. According to Dean, the retroactive application of *Booker* to his sentence violates due process and the constitutional prohibition against *ex post facto* laws. For the reasons stated below, we affirm Dean's conviction on both charges and the district court's sentence.

## I. BACKGROUND

In 1996, Ward Dean, a medical doctor, published author, and retired naval flight surgeon, became a tax protester. He had always paid his federal income

taxes faithfully up to this point, but on his 1040EZ tax form for 1996, Dean suddenly reported his income and his tax liability as "0." At the time, Dean was earning over $100,000 a year as the Medical Director for Vitamin Research Products and drawing down roughly $36,000 a year through his navy pension. Although Dean's accountant, John Graham, prepared a 1996 return and a 1997 return that reflected Dean's true earnings and his tax liability, Dean refused to file these returns and substituted 1040EZ forms that stated he owed nothing in taxes. Dean also submitted a revised W-4 form to his employer, claiming that he was exempt from federal income tax withholding for 1997.

The Internal Revenue Service ("IRS") sent Dean a letter on October 2, 1998, informing him that it considered his 1996 return frivolous because it reported "0" income, notwithstanding documentation to the contrary. That did not dissuade Dean from continuing to report his income and tax liability as "0" on subsequent tax returns, however. In 1998, Dean filed a credit application that stated his yearly income was $150,000, but when he submitted his tax return for 1998, he reported an adjusted gross income of "0" on form 1040EZ. In 1999, Dean filed another credit application that stated his yearly income was $144,000. Yet, once again, when he filed his 1999 tax return, he reported his income as "0" on form 1040.

Both the 1040EZ form and the 1040 form state on the face of the form that wages and pensions constitute income which is to be reported. The instruction booklet that the IRS puts out for these forms also states that wages and pensions constitute income. Nevertheless, Dean continued to deny any tax liability on his 1999, 2000, and 2001 income tax returns, entering "0" income on his 1040 forms for 1999-2001. He also continued to claim on his W-4 forms that he was exempt from withholding.

The IRS, for its part, continued to notify Dean that his returns incorrectly reported no income or tax liability and that he was required to pay income tax. On October 10, 2001, IRS sent Dean a letter regarding his 1997 return. The letter stated that the IRS would uphold a $500 penalty that the Service had imposed upon him for filing a frivolous income tax return in 1997. Dean challenged the penalty in the United States District Court for the Northern District of Florida.

In the meantime, IRS Revenue Agent Wayne Jackson had begun to investigate Dean's burgeoning tax debt. On January 10, 2002, Jackson issued summonses to Dean's employer, to the Department of Finance and Accounting Service ("DFAS"), which administered Dean's pension from the navy, and to several banks where Dean had accounts, requesting copies of Dean's financial

4

records. In keeping with IRS policy, Jackson sent Dean a copy of each of the summonses.

Dean immediately contacted each of the parties by letter to advise them that they were "under no obligation to comply with this *fraudulent* 'Summons.'" "It is <u>not</u> a court order," Dean stated in his letter of January 14, 2004. Rather, Dean asserted, "It is a *phony document* sent by a 'Revenue Agent' who has no authority to send a lawful summons to <u>anyone</u>." (emphasis in the original). See Government Ex. WJ.

On October 24, 2002, the district court upheld the penalty that IRS imposed on Dean for filing a frivolous 1997 tax return, granting summary judgment in favor of the Government. The court stated that Dean's "self-assessment of $0.00 gross and taxable income was obviously incorrect" and that "the incorrect information was due to [defendant's] frivolous justifications."

In 2002, Dean earned over $240,000. Despite that fact, Dean failed to file a tax return for 2002. Thereafter, the IRS began working with government prosecutors to indict Dean for tax evasion and attempting to interfere in the administration of internal revenue laws. On March 17, 2005, a federal grand jury sitting in the Northern District of Florida, indicted Dean with six counts of income tax evasion for the years of 1997 through 2002 and one count of endeavoring to

obstruct the administration of internal revenue laws. Dean's trial date was initially set for June 6, 2005, but it was subsequently postponed a number of times, until a final date was set for December 5, 2005.

On November 24, 2005, nine days before trial was to commence, Dean filed a motion to inspect the jury records pursuant to the Jury Selection and Service Act of 1968. The district court granted Dean's motion on December 1, 2005. Dean authorized his representatives to inspect the records for him, which they did the following day on December 2, 2005. Before trial started on the morning of December 5, 2005, Dean filed a motion to stay the proceedings, alleging substantial non-compliance with the Jury Selection and Service Act in seating his grand and / or petit juries.

Dean argued that he had not been able to inspect the grand jury lists, only the petit jury lists, but that the jury qualification questionnaires for the petit jury had raised questions about whether the Clerk of the Court had followed the District Jury Plan in determining the eligibility of prospective jurors. The plan stated that eligible jurors had to be U.S. citizens, who had resided within the district for a set period of time, and had the ability to speak, read and write English. According to Dean' s motion, a number of prospective jurors had indicated that they were born outside the United States, raising questions as to

6

their citizenship. He also found that a number of prospective jurors had failed to indicate how long they had resided within the Northern District of Florida and that the qualification questionnaires did not attempt to determine whether a prospective juror could speak English. Dean suggested that these problems might have plagued the grand jury questionnaires as well.

During a hearing on the motion, Dean's counsel conceded that it could resolve Dean's doubts about the Grand Jury that very morning if the court would get a copy of the grand jury list faxed over. Dean's counsel also conceded that he would have an opportunity to resolve his doubts about the nationality, residency and English-language skills of the petit jury during *voir dire*. The court delayed trial in order to give Dean's counsel an opportunity to review the grand jury list, but it ultimately denied Dean's motion to stay the proceedings because the motion failed to conform to procedural requirements. The court noted that the motion was untimely and that it did not include a sworn affidavit as required by statute. Although it did not need to reach the merits of the motion, the court also opined that the motion lacked merit because it did not seek to challenge the District Court Jury Plan.

Dean's trial proceeded as planned and concluded two days later on December 7, 2005. Dean filed a Motion for Judgment of Acquittal at the close of

the evidence, but the court denied the motion and sent the case to the jury. The jury returned a verdict of guilty on all counts that same day. Dean renewed his Motion for Judgment of Acquittal and the court denied it once again. On July 7, 2006, the court sentenced Dean to three concurrent 60-month jail terms on Counts I - III and to three other concurrent 24-month jail terms on Counts IV - VII. The district court ordered the latter sentences to run consecutively after the sentences in Counts I - III. Dean filed a timely notice of appeal of his conviction and sentence on July 14, 2006.

## II. STANDARDS OF REVIEW

Since the appellant challenges his convictions and sentence on multiple grounds, we must apply several different standards of review to his claims. First and foremost, we note that the appellant challenges several pattern jury instructions that he formerly approved at trial — the instruction regarding the crime of tax evasion and the instruction regarding the crime of attempting to interfere with the administration of internal revenue laws. We review challenges to jury instructions that are raised for the first time on appeal under a plain error standard. *United States v. Puche*, 350 F.3d 1137, 1148 (11th Cir. 2003).

A "constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right

8

before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). Under Rule 52(b) of the Federal Rules of Criminal Procedure, appellate courts have limited power to correct errors that were forfeited in this manner.

Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the attention of the court." Fed. Rules Crim. P. 52(b). As this Court noted in *Pielago*, 135 F.3d at 711, we may find evidence of plain error in either one of two situations. One occurs where an intervening decision of this Court or the Supreme Court is squarely on point and invalidates a lower court ruling. See e.g., *United States v. Walker*, 59 F.3d 1196, 1198 (11th Cir. 1995), where an intervening decision of the Supreme Court that held the Gun Free School Zone Act unconstitutional made the defendant's conviction under that statute plain error. We will also find plain error where an erroneous decision appears to be particularly egregious, and strikes at a core principle embodied in the violated law or rule. *Pielago*, 135 F.3d at 711. See, e.g., *United States v. Quinones*, 97 F.3d 473, 475 (11th Cir. 1996), where this Court found that the district court failed to ensure a criminal defendant understood the nature of the charges against him, one of the core principles embodied in Fed. R. Crim. P. 11.

If we find plain error, we have the discretion to correct the error where it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young*, 470 U.S. 1, 15(1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Where an appellant has objected to a jury instruction at trial, we review the court's decision to use that instruction for abuse of discretion. *See McCormick v. Aderholt*, 293 F.3d 1254, 1260 (11th Cir. 2002). However, we will only reverse a jury's verdict "'if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Id.* (*quoting Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998)).

Similarly, where a court declines to use a proffered jury instruction, we review that decision for abuse of discretion. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994); *United States v. Carrasco*, 381 F.3d 1237, 1242 (11th Cir. 2004). As long as a defendant's theory of defense has some basis in the evidence and legal support, a defendant is entitled to have the court instruct the jury on that theory. *United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir.1987) (citing *United States v. Gold*, 743 F.2d 800, 819 (11th Cir.1984), *cert. denied*, 469 U.S. 1217 (1985)).

Nevertheless, the refusal to give a proffered instruction only constitutes reversible error if: "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Paradies*, 98 F.3d 1266, 1286 (11th Cir. 1996) (citing *United States v. Sirang*, 70 F.3d 588, 593 (11th Cir.1995)).

Challenges to the sufficiency of the evidence involve questions of law which we review *de novo. United States v. Dodd,* 347 F.3d 893, 900 (11th Cir. 2003)*.* In doing so, we evaluate the evidence in the light most favorable to the government, and draw all reasonable inferences and credibility assessments in the government's favor. *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994).

The appellant urges us to review his challenge to the jury selection process under the same *de novo* standard. He cites *United States v. Grisham*, 63 F.3d 1074 (11th Cir. 1995) as support for the proposition that constitutional challenges to the jury selection process are reviewed *de novo*. Our responsibility is to examine the appellant's claim for what it actually is, not for what he would have it be, however. *See McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995). Although the appellant asserts that the court denied him the

11

right to inspect grand jury lists, the record indicates that he filed a motion to inspect the jury lists on November 26, 2005, nine days before trial. The district court granted that motion on December 1, 2005. The appellant inspected both the petit and grand Jury lists before trial was to commence.

On the day of trial, December 5, 2005, the appellant filed a motion to stay the proceedings, arguing that the court had failed to comply with the Jury Selection and Service Act of 1968, 28 U.S.C. § 1867. The court denied that motion on procedural grounds because it was untimely, and not accompanied by a sworn statement as required by the statute. Additionally, the court found that the § 1867 challenge lacked merit because the Jury Plan had been approved by the Eleventh Circuit and the motion did not allege that the Jury Plan was defective. Indeed, the appellant's counsel conceded during oral argument before this Court that the Jury Plan was fine. Accordingly, the appellant is not actually challenging the jury selection process, but the decision to deny his motion to stay trial. We review a decision on the timeliness of a motion to stay for abuse of discretion. *See Brooks v. United States*, 416 F.2d 1044, 1047-48 (5th Cir. 1969).[1]

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions that the former Fifth Circuit issued prior to October 1, 1981.

And, lastly, we review a constitutional challenge to a sentence *de novo*. *United States v. Chau*, 426 F.3d 1318, 1321 (11th Cir. 2005), accepting the court's factual findings unless they are clearly erroneous. *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005).

# III. DISCUSSION

*A. Defendant's Motion to Stay Trial*

The Appellant moved to stay the proceedings against him under 28 U.S.C. § 1867 on the day that his trial was to begin, alleging substantial failure to comply with the provisions of 28 U.S.C. § 1867(a) in selecting the grand and /or petit jury. Section 1867 of Title 28 of the United States Code provides in pertinent part that:

> (a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

> (d) Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment,

13

whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

28 U.S.C. § 1867(a) and (d). Thus, the Jury Selection and Service Act sets two requirements for motions to stay proceedings: a timeliness requirement under § 1867(a) and a sworn statement requirement under § 1867(d).

The grand jury returned an indictment against Dean on March 17, 2005, however, Dean did not file his motion to stay the proceedings pursuant to 28 U.S.C. § 1867(a) until the first day of trial, December 5, 2005. Although, he filed his motion before *voire dire* began, the Act authorizes defendants to file a motion for a stay "before *voir dire*," or "within seven days of when they discover or could have discovered" grounds for challenging the jury selection process, "whichever is earlier." Obviously, in this case, the earlier date would have been well before *voir dire*.

As the district court noted during oral arguments on the motion, Dean could have requested a transcript of the grand jury selection process after the Grand Jury returned its indictment against him on March 17, 2005. If he had done so, the court advised, he could have determined whether the court asked the jurors about their citizenship, length of residency within the northern district of Florida, and their

14

English language skills. Dean cited these points as grounds for questioning the composition of the jury.

Because he did not try to inspect the grand jury list and jury qualification questionnaires within seven days of his indictment, the date on which he could have discovered if there were grounds for a challenge, he failed to meet the deadline for filing a motion to stay under 28 U.S.C. § 1867(a). Courts are to construe the timeliness requirement strictly as failure to comply with the requirement forecloses a challenge under the Act. *Paradies,* 98 F.3d at 1277 (11th Cir. 1996) (citing *United States v. Bearden*, 659 F.2d 590, 595 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982)).

Moreover, 28 U.S.C. § 1867(d) mandates that all motions challenging compliance with the Jury Selection and Service Act of 1968 must be supported by a sworn statement of facts, which, if true, would constitute a substantial failure to comply with the Act. *United States v. Aguirre*, 108 F.3d 1284, 1287 (10th Cir. 1997). These procedural requirements are strictly enforced so that the district court has an opportunity to evaluate the alleged noncompliance and to correct it before precious judicial resources are invested in a trial. *United States v. Contreras*, 108 F.3d 1255, 1266 (10th Cir. 1997) (citing *United States v. Kennedy*, 548 F.2d 608, 612-14 (5th Cir.), *cert. denied*, 434 U.S. 865 (1977)).

15

Dean failed to attach a sworn statement of the facts to support his allegation that there was a substantial failure to follow the District Jury Plan for selecting eligible jurors. Accordingly, his motion to stay the proceedings fails to meet the requirements under § 1867(d) and is barred on procedural grounds. We need not reach the merits of his motion.[2]

*B. The Jury Instruction Regarding the Defendant's "Good Faith" Defense*

As a general rule, ignorance of the law or a mistake of law is no defense to criminal prosecution in the United States. *Cheek v. United States*, 498 U.S. 192, 199 (1991). However, the Supreme Court has noted that there is a "good faith" exception under the federal criminal tax statutes. *Id*. at 199-202. According to this

---

[2] The district court denied Dean's motion to stay proceedings for both of the procedural reasons cited above, but it also denied Dean's motion on the merits. See Transcript of Motions Hearing, December 5, 2005, at 14. The motion identified three potentially troublesome concerns with respect to jury qualification questionnaires: (1) some prospective jurors did not state where they were born, while others clearly stated they were born outside the country; (2) some prospective jurors did not state how long they had resided within the northern district of Florida, and lastly, (3) none of the questionnaires asked prospective jurors whether they had English language skills.

The fact that a juror indicated he or she was foreign born did not prove that the juror lacked U.S. citizenship, the court noted. Moreover, the defendant's counsel acknowledged at the motion hearing that he had not studied the District Jury Plan to know whether the court did any follow-up questioning when jurors reported for grand jury selection. Indeed, the court always asked these questions before it seated jurors reporting for grand jury duty, the court noted. Accordingly, the court concluded, the defendant had failed to meet his burden as a moving party and demonstrate that there was a "substantial failure to comply" with the Jury Selection and Service Act. Additionally, we note that Dean failed to ask any questions on these issues during *voir dire*, even though his counsel conceded during motion hearing that he could probably resolve the doubts about juror citizenship, residency or English language proficiency during *voir dire*.

16

exception, if someone simply fails to understand that he has a duty to pay income taxes under the Internal Revenue Code, he cannot be guilty of "willfully" evading those taxes. *Id*. at 201-02. The term "willfulness" presupposes the existence of a legal duty and knowledge of that duty. *Id*. at 201. If , however, someone recognizes that he has a duty to pay taxes, but simply refuses to pay or to declare his income because he believes that the Code is unconstitutional, he is not acting in "good faith." *Id.* at 204-07.

A person who is charged with tax evasion is entitled to have the jury hear an instruction on this "good faith" defense. *Id*. at 202. And, the district court provided one that was used in a Seventh Circuit case, *United States v. Hilgeford*, 7 F.3d 1340, 1343 n.1 (7th Cir. 1993). Dean argues that the instruction misled the jury because it implied that they could reject his good faith defense if they found it to be objectively unreasonable. Dean contends that the Supreme Court rejected this sort of instruction in *Cheek*.

We find that the district court's instruction conforms quite well to the Supreme Court's holding in *Cheek*. The district court instructed Dean's jury that:

> A defendant does not act willfully if he believes in good faith that he is acting within the law or that his actions comply with the law. This is so even if the defendant's belief was not objectively reasonable as long as he held the belief in food faith. Nevertheless, you may consider whether the defendant's belief about the tax statutes was actually reasonable as a factor in deciding whether he held that belief in good faith.

17

The court did not insert a caveat that a defendant's belief must be objectively reasonable to be in good faith. It simply reiterated a point that the Supreme Court made in *Cheek*:

> In this case, if Cheek asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief. ...
> Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge.

*Id.* at 202-04. Accordingly, we find that the district court's good faith instruction accurately stated the law on this issue. If we are satisfied that the district court's instruction has not misstated the law or misled the jury, we give the district court "wide discretion as to the style and wording employed in the instructions." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). The district court did not abuse that discretion in this case.

Dean also argues that the district court erred in adding a willful blindness instruction at the end of its good faith instruction. There is no merit to this argument. A willfull blindness instruction is entirely appropriate where the evidence supports a finding that a defendant intentionally insulated himself from knowledge of his tax obligations. The record showed that Dean, much like the

18

defendant in *Cheek*, had paid his taxes faithfully for a number of years before he became convinced that income taxes were unconstitutional. The record also showed that he, like the defendant in *Cheek*, had previously challenged the validity of the income tax requirement in court, and knew, as a result of the court's ruling that his arguments were frivolous. Yet, Dean failed to file a 2002 return although a court ruled against him on October 24, 2002 when he challenged a penalty that the IRS imposed on him for filing a frivolous return in 1997.

As the Supreme Court indicated in *Cheek*, albeit, not in so many words, the law would not countenance such blindness:

> We do not believe that Congress contemplated that such a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code and refuse to utilize the mechanisms provided by Congress to present his claims of invalidity to the courts and to abide by their decisions. There is no doubt that Cheek, from year to year, was free to pay the tax that the law purported to require, file for a refund and, if denied, present his claims of invalidity, constitutional or otherwise, to the courts. See 26 U. S. C. § 7422. Also, without paying the tax, he could have challenged claims of tax deficiencies in the Tax Court, § 6213, with the right to appeal to a higher court if unsuccessful. § 7482(a)(1). Cheek took neither course in some years, and when he did was unwilling to accept the outcome.

*Cheek*, 498 U.S. at 206. Thus, we conclude the district court did not err in adding a willfull blindness instruction.

*C. The Jury Instruction on Income Tax Evasion and Attempted Obstruction*

The district court used the Eleventh Circuit's Pattern Jury Instruction on income tax evasion, Criminal Offense Instruction 93.1, and attempting to interfere with the administration of internal revenue laws, Criminal Offense Instruction 97. Dean stated at trial that he did not object to the use of either of these instructions, so we review the court's decision to employ them under a plain error standard. *See Puche*, 350 F.3d at 1148.

Granted, district courts do not have to use our pattern jury instructions for they "are not precedent and cannot solely foreclose the construction of the necessary elements of a crime as stated in the statute." *United States v. Ettinger*, 344 F.3d 1149, 1158 (11th Cir. 2003). Nevertheless, our pattern jury instructions clearly state the elements of proof required for conviction under both 26 U.S.C. § 7201, *See Sansone v. United States*, 380 U.S. 343, 350-51 (1965); *United States v. Stone*, 702 F.2d 1333, 1338-39 (11th Cir. 1983), and under 26 U.S.C. 7212(a). *See United States v. Popkin*, 943 F.2d 1535, 1539-40 (11th Cir. 1991). Accordingly, the district court did not err, much less commit plain error, in using our pattern jury instruction on these offenses.

In a related vein, Dean also argues that the district court erred when it instructed the jury on the charges under count VII of the indictment, which deals with attempted interference in internal revenue actions. Dean contends that the

20

district court should not have summarized the individual obstruction charges. This argument has no merit. Dean sent essentially the same letter to each of the entities that received summonses from IRS; namely, Dean's employer, the DFAS, and his banks. The individual letters stated the same falsehood — that the entities did not have to comply with the summons to produce Dean's financial records for an IRS investigation. Thus, the court could summarize the offensive conduct quite properly as "informing entities that they were under no obligation to comply with lawful summons documents from the IRS."

This Court will not reverse a conviction on the basis of a jury charge unless we find, after examining the entire charge, that "the issues of law were presented inaccurately, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate due process." *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993) (citing *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir.), *cert. denied*, 493 U.S. 997 (1989)).We find no evidence that any of these errors occurred here.

*D. Denial of Defendant's Proffered Jury Instructions, Numbers 41 and 42*

Dean proffered jury instructions on the requirements of 26 U.S.C. §§ 6001 and 6011. These statutes mandate that anyone who is liable for income tax must keep records, submit returns and comply with the rules prescribed by the Secretary

21

of the Treasury. Dean argues that these statutes could be read to apply only to persons who are "liable" for tax, rather than all persons, and suggests that this reading bolsters his "good faith" belief defense. Accordingly, he argues, the district court abused its discretion when it refused to read these additional instructions to the jury.

We do not agree. The Government charged Dean with two offenses — income tax evasion and attempted interference in the administration of internal revenue laws. The district court instructed the jury on these two offenses and on "good faith," which provides a defense to the charge of income tax evasion. *See Cheek*, 498 U.S. at 202-07. Dean has not shown how the court's failure to include these additional instructions impaired his ability to mount a defense. *See United States v. Martinelli*, 454 F.3d 1300, 1318 (11th Cir. 2006). Dean was free to, and did, introduce documents into evidence at trial that quoted from sections 6601 and 6011 of the Internal Revenue Code. He had every opportunity to explain his reading of those sections when he testified. Thus, the court did not abuse its discretion in refusing to instruct the jury on these other, not clearly relevant, sections of the Code.

*E. The Sufficiency of the Evidence on the Attempted Obstruction Charge*

The Government presented ample evidence that Dean attempted to interfere with the administration of the summonses issued by IRS Agent Wayne Jackson on January 10, 2004. The statute that criminalizes such interference specifically proscribes the use of corrupt or forceful methods of intimidation. 26 U.S.C.§ 7212(a). Our Pattern Jury Instruction on this offense advises that a defendant acts "corruptly" if he acts "knowingly and dishonestly with the specific intent to secure an unlawful benefit either for himself or another." Eleventh Circuit Pattern Jury Instructions, Criminal P 97 (2003).

Evidence presented at trial showed that Dean sent strongly-worded letters to his employer, the DFAS, and his banks, after he learned they had received IRS summonses to produce copies of his financial records. The letters stated in no uncertain terms that these summonses were not court orders and they had no obligation to comply with them. The letters further stated that the summonses were "phony" and "fraudulent," and that the IRS Agent had no legal authority to issue summonses. The letters closed by threatening legal action against anyone who complied with them.

Although Dean may have wanted to challenge the constitutionality of the statutes that gave IRS agents the authority to issue summons, he knew that the summonses were not phony. The IRS sent him copies of each of the summonses it

23

issued, and he knew from his prior court challenge that IRS had clear legal authority to investigate his earnings. Nevertheless, he alleged that the summonses were phony and fraudulent in an attempt to dissuade his employer, the DFAS, and his banks from complying with the IRS and disclosing his earnings. Accordingly, we find that a rational trier of fact could have concluded that Dean was guilty beyond reasonable doubt of violating 26 U.S.C.§ 7212(a) because he acted corruptly when he made these false allegations.

*F. Defendant's Challenge to His Sentencing*

Dean argues that the district court erred when it based his sentence upon facts that were not conceded at trial nor proved to a jury beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). This is not the first time that he raised this objection; he asserted it at his sentencing hearing as well. Dean's Pre-Sentencing Investigation Report ("PSI") calculated his base offense level at 18 because the tax loss to the Government was $290,997.44. Dean argues that the Government did not charge the amount of tax loss in its indictment, nor prove it to the jury beyond reasonable doubt, and that he certainly did not concede this amount of loss at trial. Therefore, Dean contends it was error for the court to use this figure in calculating his Guidelines range, and that his base level should have been calculated at 6 since the amount of loss was indeterminable.

24

Moreover, the court compounded this error, Dean argues, when it sentenced him in keeping with the so-called remedial portion or second majority opinion in *United States v. Booker*, 543 U.S. 220, 259-260 (2005). *Booker* held that the section of the Sentencing Reform Act which made the Guidelines mandatory was unconstitutional. *Id.* Rather than invalidate the entire Act, the Court excised that section, making the Guidelines effectively advisory.[3] *Id*. Under the mandatory sentencing scheme that prevailed at the time Dean committed his offenses, 1997-2003, Dean's maximum sentence would have been capped by the upper end of the Guidelines range.

After *Booker*, however, district courts were free to increase sentences beyond the Guidelines range.[4] This is what the district court did in Dean's case. He argues that the court violated the due process and *ex post facto* clauses of the Fifth Amendment because the offenses for which he was being sentenced occurred before *Booker*.

---

[3] The Supreme Court actually excised two sections: 18 U.S.C. § 3553(b)(1), which mandated that courts impose sentences within the Guidelines range, and a related section, 18 U.S.C. § 3742(e), which addressed the standards of review that would govern appeals. *United States v. Booker*, 543 U.S. 220 (2005).

[4] A district court must consult the Guidelines range and consider 18 U.S.C. § 3553 sentencing factors, but once it has done so, it "may impose a more sever or lenient sentence as long as it is reasonable."*United States v. Pope*, 461 F.3d 1331, 1335 (11th Cir. 2006). Dean is not challenging the ultimate reasonableness of his sentence, however.

We have repeatedly rejected the argument that the application of the remedial portion of *Booker* to conduct that occurred prior to *Booker* violates *ex post facto* principles or due process. *United States v. Thomas*, 446 F.3d 1348, 1353-55 (11th Cir. 2006); *United States v. Duncan*, 400 F.3d 1297, 1306-08 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005); *United States v. Hunt*, 459 F.3d 1180, 1181 n.1 (11th Cir. 2006).

We have also held that a district court may make additional factual findings under a preponderance of the evidence standard, that go beyond the facts found by the jury, so long as the court recognizes the Guidelines are advisory. *United States v. Pope*, 461 F.3d 1331, 1335 (11th Cir. 2006). And, we have held that a district court may enhance a sentence based upon judicial fact-finding provided that its findings do not increase the sentence beyond the statutory maximum authorized by facts determined in a guilty plea or jury verdict. *Hunt*, 459 F.3d at 1182. We have also stated that the maximum sentence is the sentence prescribed under United States Code. *See Duncan*, 400 F.3d at 1308 (citing *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir. 2001)).

The district court applied the Guidelines as advisory. It sentenced Dean to a total of 84 months: three concurrent jail terms of 60 months on Counts I - III and three concurrent jail terms of 24 months on Counts IV - VII. The sentences for

26

Counts I -III and Counts IV - VII were to run consecutively. Under the United States Code, the statutory maximum for tax evasion (Counts I - VI) is 60 months and the maximum for attempting to interfere with the administration of internal revenue laws (Count VII) is 36 months. See 26 U.S.C.§ 7201 and 26 U.S.C.§ 7212(a). The district court did not increase Dean's sentence beyond this statutory maximum. Additionally, we find that the amount of tax loss stated in Dean's PSI conforms to the evidence on record from the IRS. Accordingly, the district court's factual finding on the amount of loss was not clearly erroneous.

## IV. CONCLUSION

The district court properly denied Dean's motion to stay proceedings because of a substantial failure to comply with the Jury Selection and Service Act. Dean's motion was untimely and it did not contain a sworn affidavit stating facts in support of his allegation. Thus, we find that his motion is barred on procedural grounds.

We also find that there was sufficient evidence to convict Dean of attempting to interfere with the administration of internal revenue laws under 26 U.S.C. § 7212(a). The record showed that Dean wrote his employer, the DFAS, and various financial institutions to notify them that the IRS had issued "phony" and "fraudulent" summonses for information from his financial records, and to

advise them that he would take legal action if they released his records to the IRS. The statute criminalizes corrupt or forceful attempts to impede the administration of internal revenue laws, including the use of "threatening letters."

We also find that the district court's jury instructions were proper. The district court did not err when it used our pattern jury instructions to inform the jury on what the charges of tax evasion and attempting to interfere with the administration of internal revenue laws entailed. Nor did it err when it instructed the jury on the "good faith" belief defense that applies to charges of income tax evasion. The district court's instruction on "good faith" conformed to the standards that the Supreme Court recognized for this defense in *Cheek*.

We also find that the district court did not abuse its discretion when it refused to give the jury the additional instructions proffered by Dean. The proffered instructions concerned sections of the Internal Revenue Code that were not specifically relevant to the sections cited in the Government's charges against Dean. And, Dean did not show that the failure to give these additional instructions impacted his ability to assert a good faith defense.

Finally, we find that the district court's determination on the amount of tax loss was supported by the record and not clearly erroneous. Thus, the district court properly relied upon this finding in calculating the Guidelines range for Dean's

28

sentence. The district court treated the Guidelines as advisory and chose to increase Dean's sentence beyond the advisory Guidelines range. This decision did not violate *Booker,* nor did it offend due process or subject him to *ex post facto* punishment.

**AFFIRMED.**