[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13103
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00122-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WARD FRANKLIN DEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 24, 2010)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Ward Franklin Dean appeals the district court's order affirming a magistrate

judge's denial of his motion for a judgment of acquittal regarding his conviction under the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1867(f), for unlawfully disclosing the contents of records and papers used in connection with the jury selection process of his previous tax-evasion trial. See United States v. Dean, 487 F.3d 840 (11th Cir. 2007). Dean argues that the district court erred in affirming the denial of his motion for a judgment for acquittal because: (1) his actions do not fall within the JSSA; (2) he did not knowingly and willfully disclose confidential jury information; and (3) his actions in pursuit of a legitimate claim to defend himself were protected by the Fifth and Sixth Amendments. We AFFIRM.

## I. BACKGROUND

Dean appeals his conviction under 28 U.S.C. § 1867(f) for unlawful disclosure of jury selection materials obtained from his original tax-evasion trial. Therefore, it is necessary to start with his original tax-evasion trial to put the present appeal into its proper context.

On 17 March 2005, Dean was indicted by a grand jury on six counts of tax evasion, all in violation of 26 U.S.C. § 7201, and one count of endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). The trial was set for 5 December 2005. See United States v. Dean, 487 F.3d 840, 845 (11th Cir. 2007). On 24 November

2005, before the commencement of trial, Dean filed a motion to inspect, examine, and copy all jury selection records pursuant to 28 U.S.C. § 1867 (a) and (f) and the Sixth Amendment.  On 1 December 2005, the district court granted the motion by instructing Dean to contact Beatrice Spencer of the U.S. District Court in Tallahassee, Florida, but cautioned him to "be mindful of the constraints of the Privacy Act" pursuant to 5 U.S.C. § 552a and 18 U.S.C. § 1867(f).  Through his representatives, Dean obtained the relevant jury information on 2 December 2005, which turned out to be incomplete because it only contained the petit jury lists and not the grand jury lists.  Dean, 487 F.3d at 845-846.  Dean received and inspected copies of the grand jury list on the day of the trial.  Id. at 846.  A jury found Dean guilty on 7 December 2005 and the district court sentenced him to a total of 84 months of imprisonment.  Id.  We affirmed Dean's convictions and sentences.  Id. at 844.

During Dean's resultant incarceration, on 29 January 2007, a grand jury charged him with one count of unlawfully disclosing the contents of a record and paper used by a clerk of the U.S. District Court for the Northern District of Florida in connection with the jury selection process, in violation of 28 U.S.C. § 1867(a)-(c) and (f).

A bench trial commenced on 7 May 2007, before a magistrate judge.  Exh.

3

Vol. 3, Exh. 77. Rex Blackburn, a police officer, testified that a personal identification number ("PIN") assigned to Dean to make telephone calls from prison showed that three calls were made in January 2006, two to telephone number (850) 455-1150 and one to telephone number (850) 623-3836. Id. at 19-21. Kathy Stinson, a supervisor at the Santa Rosa County Sheriff's Office, testified that two more calls were made on 4 March 2006, to (850) 455-1150. Id. at 23-25. Also, Stinson testified that three calls were made between March and April 2006 to the same numbers above from a PIN that belonged to an inmate named Michael Pair. Id. at 25-27.

Beatrice Spencer, a jury administrator for the Clerk's Office of the U.S. District Court for the Northern District of Florida, testified that she received a court order on 1 December 2005 that instructed her to allow Dean to inspect jury selection records of his impending tax evasion trial. Id. at 35-37, 40. After confirming twice with Dean on the telephone the types of documents sought, Spencer released copies of the jury information forms, letters requesting excuse from summonses, and undeliverable summonses to B. C. Williams and Sharon Branco, to whom had Dean had a limited power of attorney. Id. at 37-39. Next, Spencer explained that the district court's "jury plan" for selecting jurors involved a master wheel that contained a list of all registered voters who were randomly

4

selected to be placed in the wheel. Id. at 41-42. To be selected into the master wheel, potential jurors were sent a "juror qualification questionnaire" to determine whether they would be allowed to serve. Id. at 42. Once the potential jurors were included in the master wheel, Spencer would send out separate summonses and "jury information forms" for those selected for actual jury duty. The master wheel used for Dean's tax evasion trial was still in use at the time of Spencer's testimony and was scheduled to be emptied in October 2008. Id.

Madeline Griffin, one of the jurors from Dean's tax evasion trial, testified that she received two letters from a "William Jones" after the trial. Id. at 60-61. Pamela Hardy, a deputy U.S. Marshal, testified that pursuant to an official investigation, she contacted all jurors from Dean's first trial and discovered other letters from William Jones, similar to those that Griffin had received. Id. at 65-69. Tanya Burgess, an IRS agent, summarized the letters from Jones as generally inquiring as to why the jury convicted Dean. Id. at 70-73. Burgess testified that documents seized from Dean's prison cell showed that Michael Pair and Dean were "buddies" in prison. Id. at 75-76. The seized documents also included: (1) contact information for a "Bill Jones"; (2) numerous references to and letters from Jones; and (3) the telephone number (850) 455-1150 with the name "Sport" beside it; and (4) the number (850) 623-3836 with the name "Leslie" next to it. Id.

5

at 76-79.  "Sport" was identified by Dean during recorded conversations as Fred Suttles, and "Leslie" as Leslie Watson.  Id. at 77-78.

The exhibits submitted by the government include transcripts of recorded telephone conversations from Dean while he was in prison.  Exh. Folder 5, Gov't Exhs. T1-T8.  The first recorded telephone call, dated 1 January 2006, between Dean, Suttles, and John Weber, showed the three participants discussing ways to retrieve the grand jury list from "Larry" so Suttles and Weber could have the list as well.  Id., Exh. T1.  Toward the end of the conversation, Weber cautioned that Dean was only authorized to have the grand jury list, but may not be authorized to "disseminate it further," to which Dean replied, "That's correct."  Id.  In a subsequent telephone conversation on the same day, Dean reiterated to Suttles and Weber that he was "authorized" to have the grand jury list, but could not "go out and disseminate it, and publish it, and put it on [his] website and stuff like that." Id., Exh. T2.  In a conversation between Dean and Watson on 17 January 2006, Dean instructed Watson to first find the section of the trial transcript where the jury was polled, and then "give those names [and] jury questionnaires" to "Pat," so Pat could "start setting up interviews."  Id., Exh. T3.  In a conversation between Dean, Suttles, and Billy Bass on 4 March 2006, Dean instructed Suttles and Bass to "ask [Watson] to put together the list of jurors and phone numbers and addresses" so

6

that "Leo" could "start calling them today."  Id., Exh. T4.  In a conversation between Dean, Suttles, and "Jeff" on 22 March 2006, Dean stated that "Leslie could only find eleven of the questionnaires" because the questionnaire for the foreperson was missing.  Id., Exh. T6.  In a conversation between Dean and Watson on 23 March 2006, Dean instructed Watson to conduct a "zaba search"[1] on a grand jury member.  Id., Exh. T7.  Finally, in a conversation between Dean, Suttles, and Weber on 8 April 2006, Dean stated that "Larry" had a set of juror questionnaires and "Leslie" had another set as well.  Id., Exh. T8.

At the close of the government's case in chief, Dean moved for a judgment of acquittal on the grounds that the government had failed to prove that Dean or his acquaintances actually disclosed confidential information regarding the jury selection process from the original trial.  Exh. Vol. 3, Exh. 77 at 95-99.  Specifically, Dean argued that neither he nor his associates actually disclosed confidential information, in that the names of the actual jurors who had served in his first trial were transcribed and became public information at the commencement of trial, or alternatively, at the end of the trial when the jurors were polled.  Id. at 95-98, 102-04, 107-08.  Dean further argued that a defendant could legally contact jurors after a trial.  Id. at 101-02.  Also, Dean asserted that he could

---

[1] The internet site www.zabasearch.com allows a free public records search using anyone's name or telephone number.

7

have gotten the names and addresses of the jurors from other sources instead of the jury information forms. Id. at 101. It is noteworthy that Dean did not argue that the JSSA contained a separate mens rea requirement that the offense be committed "knowingly and willfully," or that the government failed to prove such element beyond a reasonable doubt. See id. at 95-102. Moreover, Dean did not argue that his actions were protected by the Fifth and Sixth Amendments. See id.

On the next day, the magistrate judge found Dean guilty of the offense charged and denied his motion for a judgment of acquittal. Exh. Vol. 3, Exh. 78 at 2-3. In a written order, the magistrate judge specifically found that Dean, "directly or through third parties, willfully and unlawfully disclosed . . . Jury Information Forms" by providing such forms to Leslie Watson and allowing them to end up in the possession of William Jones. Exh. Vol. 1, Exh. 60 at 7; Exh. Vol. 3, Exh. 78 at 2-3. The magistrate judge rejected Dean's contention that once the names of the jurors became public record during the original trial, he could legally disclose all other confidential information concerning the jurors. Exh. Vol. 1, Exh. 60 at 8. The magistrate judge added that Dean's motive in contacting the jurors was "irrelevant," since the disclosure of confidential information for any purpose other than filing a motion to challenge the jury pool would be a criminal act. Id. at 10. Dean was sentenced to six months of imprisonment, to be served consecutive to his current tax-evasion sentences. Exh. Vol. 1, Exh. 73; Exh. Vol. 4, Exh. 80 at 22.

Dean appeals, arguing: (1) that he was entitled to acquittal or a finding of not guilty because his conduct with the jury information related to a legitimate legal claim to defend himself; (2) that he was entitled to acquittal or a finding of not guilty because the government failed to prove the relevant mens rea; and (3) that he was entitled to acquittal because his conduct was protected by the Fifth and Sixth Amendments.

## II. DISCUSSION

"We review de novo a district court's denial of judgment of acquittal." United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). We also review de novo issues of statutory interpretation. United States v. Gilbert, 130 F.3d 1458, 1461 (11th Cir. 1997). Nevertheless, we review claims that are raised for the first time on appeal for plain error. United States v. Rahim, 431 F.3d 753, 756 (11th Cir. 2005) (per curiam). This includes cases in which a party objects to a trial court's ruling on a specific ground and subsequently attacks the ruling via a different argument on appeal. See United States v. Puche, 350 F.3d 1137, 1148 n.5 (11th Cir. 2003). This also includes cases in which a party fails to object during a trial conducted by a magistrate judge but does so in district court. See United States v. Williams, 121 F.3d 615, 618 (11th Cir. 1997) (holding that the defendant's failure to raise constitutional issues at a trial conducted by a magistrate judge "reduces our review to a search for plain error"). Plain error exists if there is

9

(1) error; (2) that is "clear or obvious, rather than subject to reasonable dispute"; (3) that affects the defendant's substantial rights in that it would affect the outcome of the trial; and (4) "if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Puckett, __ U.S. __, __, 129 S. Ct. 1423, 1429 (2009) (quotation marks and citation omitted). Because Dean failed to raise all three arguments on appeal in front of the magistrate judge during his bench trial, we review them for plain error only. Williams, 121 F.3d at 618.

First, Dean argues that his actions are outside the reach of the JSSA because the JSSA does not penalize disclosures pursuant to a legitimate effort to construct a post-trial defense. Dean's disclosure of confidential jury information satisfied all elements of the JSSA and did not fall under an exception, even if he was pursuing a legitimate argument on appeal of his tax-evasion convictions. As an initial matter, even though Dean correctly contends that a defendant is always entitled to inspect jury records according to United States v. Test, 420 U.S. 28, 95 S.Ct. 749, he ignores the fact that Test and the JSSA govern mutually exclusive rights. The plain language of the JSSA imposes restrictions on the purpose and timing of a defendant's disclosure of confidential jury information after he obtains such information under Test. The JSSA expressly permits disclosure if it is: (1) "pursuant to the district court plan or . . . necessary in the preparation . . . of a motion" under the previous subsections; or (2) "after the master jury wheel has

10

been emptied and refilled . . . and all persons selected to serve as jurors before the master wheel was emptied have completed such service." 28 U.S.C. § 1867(f). None of the exceptions above applies in Dean's situation, since he failed to use the information for a statutorily permissible purpose or during the applicable period.

Even though the JSSA allows Dean to disseminate confidential information for the purpose of filing a motion to challenge the jury selection procedures at the earlier of two events–"before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered . . . the grounds therefor"–the record shows that Dean did not disclose such information in preparation of filing a § 1867(a) motion or before the expiration of the applicable deadline. 28 U.S.C. § 1867(a). Specifically, the record shows the following timeline for Dean's original tax evasion trial: (1) Dean was indicted by a grand jury on 17 March 2005; (2) Dean filed a motion to inspect jury selection records on 24 November 2005; (3) Dean obtained jury information forms of the petit jury on 2 December 2005; (4) Dean inspected and copied grand jury information in the morning of 5 December 2005; (5) Dean's trial commenced on 5 December 2005; and (6) Dean was convicted by a jury on 7 December 2005. See Dean, 487 F.3d at 845-46.

Accordingly, Dean's dissemination of confidential jury information over the telephone from January to March 2006 to formulate a post-trial defense happened

11

after all the relevant deadlines set forth to file a § 1867(a) motion had passed.  See

Exh. Folder 5, gov't exhs. T1-T8.  Likewise, Dean concedes that the disclosure

was pursuant to mounting a post-trial defense rather than filing a pre-trial motion

under subsection (a).  Finally, Dean fails to satisfy the "timing" requirement

because the record shows that the master wheel in use during Dean's tax evasion

trial had not been emptied at the time of his disclosure.  See exh. 3, transcript

5/7/07 at 42.  Therefore, there was no error, much less plain error, in the district

court's conclusion that Dean's disclosure of confidential jury information satisfied

all the elements of the JSSA and did not fall under an exception, even if he was

pursuing a legitimate post-trial defense.

Second, Dean submits that the JSSA requires a mens rea of criminal intent,

which he lacked because he did not knowingly and willfully disclose the

information.  We have held that if a criminal statute is silent as to mens rea, such

silence is "dispositive" because "[w]here no specific intent element is apparent on

the face of the statute, the crime is one of general intent."  United States v. Campa,

529 F.3d 980, 999 (11th Cir. 2008) (quotation marks and citation omitted).  A

defendant "need not intend to violate the law to commit a general intent crime, but

he must actually intend to do the act that the law proscribes."  Id. (quotation marks

and citation omitted).

Because the JSSA is silent as to the requisite mens rea for a criminal

conviction, it is a general intent statute that requires only a "knowing" intent to commit the act proscribed by the statute. United States v. Knight, 490 F.3d 1268, 1271 (11th Cir. 2007). Accordingly, Dean's conviction under the JSSA is proper because the record shows, and he has also conceded, that he knowingly disclosed confidential information to others outside of the statutory-permissible grounds. See id.

Dean's arguments on this question are inapposite. He contends that the JSSA resembles a "strongly disfavored" strict liability statute if we do not fill the missing mens rea requirement with specific intent. Our precedent, however, establishes that the absence of a statutory mens rea creates a general intent crime. See Campa, 529 F.3d at 999. Likewise, Dean's assertion that he lacked even general intent because he did not knowingly cause harm to any juror ignores the fact that "knowing" intent only requires him to intend to commit the statutorily prohibited act of disclosing confidential jury information outside the permissible grounds. See id. Dean's reliance on Knight to show that we have imputed a mens rea element into an otherwise silent statute to separate "wrongful from innocent conduct" is misplaced. Contrary to Dean's contention, Knight stands for the proposition that: (1) a statute with a silent mens rea only requires general intent, and (2) requiring a mens rea of general intent satisfies the goal of properly separating wrongful and innocent conduct. See Knight, 490 F.3d at 1270-71

13

(rejecting the defendant's argument that a silent mens rea requires specific intent instead of general intent to separate properly wrongful and innocent conduct). Finally, because the JSSA is unambiguous, the rule of lenity does not apply. See Santos, __ U.S. at __, 128 S. Ct. 2020, 2025 (2008).

Third, Dean argues that the Fifth and Sixth Amendments protect his actions with the jury information. We review issues of constitutional law de novo. Gilbert, 130 F.3d at 1461. Nevertheless, when the defendant fails to object below, we reverse only for plain error. United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006) (per curiam); Williams, 121 F.3d at 618. The district court correctly reviewed Dean's constitutional claims for plain error because, contrary to his assertions, the record shows that he had failed to raise such objections during the relevant proceedings in front of the magistrate judge. Even though Dean correctly contends that the district court did address his constitutional arguments below, and that he did cite to the Sixth Amendment for support in a motion filed before the commencement of his tax-evasion trial, this does not demonstrate that he had timely preserved the relevant constitutional issues in his motion for a judgment of acquittal in front of the magistrate judge. See Williams, 121 F.3d at 618.

The Sixth Amendment provides an accused with myriad trial rights, such as the right to a speedy and public trial, to be tried by an impartial jury, to be informed of the nature and cause of the accusation, to confront witnesses against

14

him, to have compulsory process for obtaining favorable witnesses, and to assistance of counsel. The Fifth Amendment prohibits deprivation of life, liberty, or property without due process of law. At a minimum, due process requires notice and an opportunity to be heard before any governmental deprivation of a liberty interest. Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Accordingly, when government action deprives a person of liberty, it must do so fairly. United States v. Salerno, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987).

Dean cannot show plain error as to his Fifth and Sixth Amendment arguments. Dean asserts that his statutorily prohibited activities are protected by the Fifth and Sixth Amendments because (1) they were part of a legitimate defense effort, and (2) his conviction deprived him of the right to defend himself. Research has revealed no case of ours or from the Supreme Court addressing whether § 1867(f) violates a defendant's Fifth or Sixth Amendment rights. Even if the district court erroneously found that there was no constitutional violation, the error would not be "plain" in the absence of binding precedent that the constitutional matters should be resolved in Dean's favor. See United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam).

Dean argues that constitutional protections trump any statutory impediment to one's right to defend against criminal charges. In Brooks v. Tennessee, 406 U.S. 605, 92 S. Ct. 1891 (1972), a state law mandated that a defendant testify

15

before all defense witnesses or be foreclosed from testifying. The Supreme Court held that this violated the defendant's constitutional rights against self-incrimination and to due process. Id. at 609-12; 92 S. Ct. at 1893-95. Though the defendant in Brooks had his constitutional rights infringed upon by a state statute, Dean does not have an unqualified right to defend himself against criminal charges; the JSSA did not infringe upon a constitutionally-protected right. Dean was afforded a "meaningful opportunity to defend himself" and was convicted only after every element of the crime was established beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 313-14, 99 S. Ct. 2781, 2786 (1979).

### III. CONCLUSION

Dean appeals the district court's order affirming a magistrate judge's denial of his motion for acquittal regarding his conviction under the JSSA. We hold that the district court did not plainly err in finding that Dean's conduct fell within the ambit fo the JSSA and met its general intent mens rea standard, nor in rejecting Dean's constitutional claims. Based on a review of the record and the parties' briefs, we affirm Dean's conviction.

**AFFIRMED.**

16