[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10237

_____

D. C. Docket No. 05-00093-CR-001-CAR-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER W. MOORE,
DEBORAH S. MOORE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**(October 26, 2007)**

Before CARNES, BARKETT and HILL, Circuit Judges.

CARNES, Circuit Judge:

This is a simple sufficiency of the evidence case governed by Federal Rule

of Criminal Procedure 29(b), and specifically by the last sentence of that subsection. Fed. R. Crim. P. 29(b). It provides that if the district court reserves ruling on a motion for judgment of acquittal, the court must decide the motion on the basis of the evidence at the time the ruling was reserved. Id.

The provision is an important one. As the committee note to the amendment that added this provision in 1994 explains, it was designed to resolve a difficulty that defendants had faced when the court reserved a ruling on a motion for judgment of acquittal at the end of the government's case. Before the amendment a defendant deprived of an immediate ruling on the sufficiency of the evidence had to decide between freezing the evidence at that point in order to preserve the issue, or presenting additional evidence in his own case and risk filling any holes in the government's case that had existed up until then. Fed. R. Crim. P. 29(b) advisory committee's note to 1994 amend.

The risk was not insubstantial, particularly where, as in our own circuit, the jury's rejection of the defendant's own testimony can serve as affirmative evidence of guilt. See United States v. Howard, 895 F.2d 722, 724–25 (11th Cir. 1990) ("In addition to other evidence, each defendant testified at the trial and offered his story, denying knowledge of marijuana and explaining his acts. The jury was entitled to reject this testimony: defendants subjected themselves to a credibility

2

determination and ran the risk of bolstering the government's case."); United States v. Bennett, 848 F.2d 1134, 1139 (11th Cir. 1988) ("By choosing to present a defense the Bennetts incurred the risk that they might bolster the government's case. Indeed, this court has held that a defendant's implausible explanation may constitute positive evidence in support of a jury verdict.").

The amendment to Rule 29, by entitling the defendant to a snapshot of the evidence at the point that the court reserves its ruling, frees the defendant to present additional evidence without fear of doing himself harm on the sufficiency issue. That freedom is made possible by the assurance that appellate review, as well as the district court's own consideration, is limited to the evidence in the government's case in chief. Fed. R. Crim. P. 29(b) advisory committee's note to 1994 amend. ("And in reviewing a trial court's ruling, the appellate court would be similarly limited.").

The husband and wife defendants in this case, Walter Wayne Moore and Deborah Moore, were convicted of twenty-eight counts of theft of government property, in violation of 18 U.S.C. § 641. The factual basis for the charges was that they received and converted to their own use the monthly Veterans Administration benefits that had been payable to Walter's mother, Verlon Moore, after the death of her husband (and Walter's father), Moses Moore. At the time of

3

Verlon's death in June 1997 the benefits were being paid by direct deposit into a joint account that she and Walter had in their local bank in Macon, Georgia. When she died the deposits should have stopped, because they were a widow's benefits (technically "dependency indemnity compensation benefits"), not an annuity or asset that would continue after the widow's death, at least not to a child of Walter's age.[1]

But the payments did not stop after Verlon's death. Instead, as before, every month a direct deposit in the amount of Verlon's VA benefit was made into the same bank account, even though her name was removed from the account shortly after her death and Deborah's name was added to the account a year or so later. And so it went for five years. The benefits, which should have stopped coming at Verlon's death, kept being deposited into Walter and Deborah's account, and the two of them kept spending those funds out of the account. The Veterans Administration finally discovered in January 2003—no thanks to Walter and Deborah—that Verlon had died and it stopped the flow of payments, but not before $73,000 or so had been erroneously deposited and spent.

---

[1] The evidence at trial established that a child of a deceased veteran whose service qualified would be entitled to the benefits if under age eighteen, or up to age twenty-three if enrolled in school. Walter was well above age twenty-three.

4

The Moores have never denied that they received and spent the VA benefit money after Verlon's death. Their defense has been that they did not know, because no one ever told them, that Walter was not entitled to the benefits after his mother died. In legal parlance, they put the government to its burden of proving the knowledge element of the 18 U.S.C. § 641 offense—that they knew the funds belonged to the government when they used them for their own purposes. See United States v. Lanier, 920 F.2d 887, 895 n.62 (11th Cir. 1991) (an element of the offense is that the defendant acted "knowingly and willfully with the intent either temporarily or permanently to deprive the government of the property").

At the close of the government's case, each of the Moores moved for a judgment of acquittal, pinpointing the willful, knowing, and intentional requirements of the offense. The district court reserved a ruling on their motions. Then Walter presented evidence, consisting of his own testimony. Walter testified that he had believed that he was entitled to the funds after his mother's death, because she had told him the payments resulted from an annuity his father had purchased which would go to Walter after her death. On cross-examination the government attempted to poke holes in Walter's story, and he attempted to patch them up. At the end of Walter's testimony both defendants rested (Deborah presented no evidence), and moved again for a judgment of acquittal. Again, the

5

court reserved a ruling until after the jury's verdict. The jury convicted both defendants of all twenty-eight counts. The defendants then reminded the court that it had not ruled on their motions for judgment of acquittal. The court acknowledged that and finally denied those motions without discussion.

In reviewing the sufficiency of the evidence, we cannot consider, as the government's brief urges us to, the testimony of Walter Moore and the adverse credibility determination the jury obviously made regarding it. Having seen him testify and having heard his explanation, the jury must have decided that Walter was lying when he denied knowing that he was not entitled to continue receiving the benefits after Verlon died. Otherwise, it would have acquitted him. That is how the fact finding process ordinarily works, but we are not reviewing the jury's verdict or considering the sufficiency of the evidence on which it was based. Instead, because the snapshot provision in the last sentence of Rule 29(b) applies, we are reviewing the sufficiency of the evidence only as it stood at the end of the government's case.

Considering only that evidence, we conclude that the government failed to present enough to prove beyond a reasonable doubt that either Walter or Deborah knew they were not entitled to the continuing VA payments after Verlon's death. We reach this conclusion even though the standard of review is stacked in the

6

government's favor. See United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007) ("We view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.") (internal citations and marks omitted).

In its case in chief, the government presented testimony from four witnesses: (1) the service center manager for the Veterans Administration's Atlanta Regional Office; (2) the investigator from the Veterans Administration who discovered that Walter and Deborah were receiving Verlon's benefits after she died; (3) the business director from Hart's Mortuary, the funeral home that handled Moses Moore's funeral and burial arrangements; and (4) the owner of Bridges Funeral Home and Crematory, the funeral home that handled Verlon's burial arrangements. The testimony from these witnesses clearly established that no one, including Walter and Deborah, was entitled to receive Verlon's VA benefits after her death, but that in spite of this, Walter and Deborah had continued receiving and spending those benefits for more than five years after Verlon died. Those two facts were clearly established by the evidence.

What was not established by the evidence, however, was that either Walter or Deborah had any knowledge that they were not entitled to keep receiving Verlon's VA benefits after her death. There is no evidence that the Veterans Administration ever notified Walter and Deborah that they were not entitled to continue receiving Verlon's benefits after she died, or that they were required to notify the agency of her death. Instead, the government's evidence merely established that the monthly direct deposits into the account that Walter and Verlon had shared continued until the Veterans Administration discovered Verlon's death and terminated the benefits in January 2003.

The government stresses that Walter made all of the arrangements for Verlon's funeral, but he did not publish an obituary in the local newspaper as he had for his father. From that, apparently, the government would have a fact finder infer that Walter was trying to hide his mother's death from the government. But there is no evidence that Walter or anyone else would have thought that the Veterans Administration was monitoring death notices in The Macon Telegraph, as esteemed as that local newspaper may be.

The government did introduce evidence that the funeral home had offered to assist Walter in applying to the VA for benefits as a result of Verlon's own relatively short service in the military. But it is undisputed that she had not served

long enough to have earned any benefits in her own right, and there was no evidence that Walter thought she had. The funeral home owner testified that based on the information about Verlon that Walter gave him there was no reason for Walter to file any application for benefits based on her service. Guilty knowledge cannot be inferred from the failure to do a futile act.

The government also attempts to make something of the fact that the direct deposit showed up on Walter and Deborah's bank statement each month as "US Treasury 220 VA Benefit." That proves nothing beyond the fact that they knew they were continuing to receive the benefit payments after Verlon died, something they have never denied. It does not evidence any knowledge on their part that they were not entitled to continue receiving those payments.

Considering only the evidence admitted during the government's case, and viewing that evidence in the light most favorable to the government, there was insufficient evidence for a reasonable jury to have found beyond a reasonable doubt that Walter or Deborah knew that they were not entitled to continue receiving the VA benefits that Verlon had been receiving before she died. The district court should have granted the motion for judgment of acquittal that each of them filed.

REVERSED.