[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12146
Non-Argument Calendar

_____

D. C. Docket No. 06-00031-CR-02-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUBERT ARTIS, JR.,
TIMOTHY LESHON WORTHEN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(January 7, 2008)**

Before ANDERSON, BLACK and HULL, Circuit Judges.

PER CURIAM:

Hubert Artis, Jr. and Timothy L. Worthen appeal their convictions for conspiracy to possess with intent to distribute over 5 kilograms of cocaine hydrochloride, 21 U.S.C. §§ 846, 841(a)(1), and 851, and possession with intent to distribute over 500 grams of cocaine hydrochloride, 21 U.S.C. §§ 841(a)(1), and 851. We address each of their arguments in turn, and affirm their convictions.

## I.

Worthen first argues the proffer agreement, which limits his rights under Rule 410 of the Federal Rules of Evidence, should be strictly construed against the Government. Worthen contends the district court erred by allowing the introduction of the entire proffer, including portions of the proffer that did not specifically contradict any portion of Worthen's trial testimony. In particular, the district court erred by allowing Agent Marbert, during the Government's rebuttal, to testify about statements Worthen had made regarding the 11 individuals from whom he had purchased drugs. Worthen asserts that his trial testimony did not contradict his proffer statements regarding individuals from whom he had purchased drugs. Worthen also contends that his "general" statement during trial that he did not sell cocaine was not sufficient to allow for the introduction of his entire proffer, which was prejudicial. Finally, Worthen argues that the protections accorded to a defendant by Federal Rule of Evidence 410 may not be waived by

the defendant and, therefore, the district court erred by allowing the introduction of any portion of the proffer statement.[1]

"[A]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not admissible as evidence in a criminal trial. Fed. R. Evid. 410. However, a defendant may waive the rights he is accorded pursuant to Federal Rule of Evidence 410. *United States v. Mezzanatto*, 115 S. Ct. 797, 805-06 (1995). "The construction of proffer agreements, like plea agreements, is governed generally by the principles of contract law, as we have adapted it for the purposes of criminal law." *United States v. Pielago*, 135 F.3d 703, 709 (11th Cir. 1998). "Any ambiguities in the terms of a proffer agreement should be resolved in favor of the criminal defendant." *Id.* at 709-10.

The district court did not err by allowing the introduction of statements made by Worthen during the proffer. *See United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998) ("Whether the government has breached a plea agreement is a question of law that this we review *de novo*."). The proffer letter

---

[1]Artis makes the same arguments in his brief. Artis never objected to the introduction of the evidence during the trial, but only asked for a limiting instruction, which the court gave, instructing the jury that the testimony regarding the proffer statements was only to be considered with regard to Worthen, and not Artis. Artis's argument on appeal regarding the proffer statement testimony is rejected for the same reasons as Worthen's argument and, also, because Artis fails to explain how he was prejudiced by the introduction of the proffer statements.

3

provided that all discussions would be governed by "Rule 410 of the Federal Rules of Evidence, as modified herein." The letter also provided that no statements made by Worthen or his counsel could be used in the Government's case-in-chief; however, such statements could be used "for the purpose of cross-examination, impeachment, and rebuttal should [Worthen] testify at any proceeding in any manner contrary to this proffer." All of the testimony by Agent Marbert that Worthen points to as violating the terms of the proffer agreement plainly impeached Worthen's trial testimony. Worthen stated, while being cross-examined, that he did not sell cocaine and, pursuant to the proffer agreement, the Government was entitled to use statements made by Worthen during the proffer "for the purpose of cross-examination, impeachment, and rebuttal" in the event that statements made during the proffer were inconsistent with the statement "I don't sell cocaine." The admission of Worthen's proffer letter stating that he had purchased large quantities of cocaine and from whom he had purchased the cocaine, served to discredit, and therefore impeach, his trial testimony that he did not sell cocaine. Worthen does not cite any law standing for the proposition that statements used for impeachment must be of the same level of generality as the testimonial statements they discredit.

As for Worthen's argument that defendants should not be able to waive their rights pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6)(D), the argument was not raised in the district court and, therefore, is subject to review for plain error. *See Pielago*, 135 F.3d at 711 (reviewing for plain error whether the admission of certain testimony violated a proffer agreement where no objection was raised in the district court). In any event, the Supreme Court has held that a defendant may waive the rights he is accorded pursuant to Federal Rule of Evidence 410. *See Mezzanatto*, 115 S. Ct. at 805-06. Therefore, the district court did not err by allowing testimony regarding portions of Worthen's proffer to impeach or rebut his trial testimony.

**II.**

Next, Worthen and Artis assert the Government did not present sufficient evidence to support their convictions for conspiracy to possess with intent to distribute cocaine hydrochloride. They contend the Government did not introduce any evidence concerning drugs on their persons or at their residences, other than the drugs involved in the sting operation at Tutt's residence. There was no evidence of any paraphernalia associated with distributing drugs at their homes or on their persons, and the knife, scales, and baggies used on the day of the sting

5

operation were provided by Tutt. There were no bank records, wire transfers, or drug notes introduced as evidence.

Worthen and Artis also assert that, even if there was sufficient evidence to convict them of the conspiracy charged in Count One, there was not sufficient evidence for the jury to find that the conspiracy involved more than five kilograms of cocaine. Worthen's and Artis's arguments are based on their assertion that Tutt's testimony, standing alone, was insufficient because it did not establish that Tutt had sold them a total amount of cocaine in excess of five kilograms. Their argument is based on the position that we should give consideration to the original trial transcripts, which were later amended by the court reporter to correct a typographical error.

"Sufficiency of the evidence is a question of law reviewed *de novo*. We, however, view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Martinez*, 83 F.3d 371, 373-74 (11th Cir. 1996) (internal citations omitted). Credibility determinations are for the jury to make, and we typically will not review such determinations. *United States. v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). Additionally, "when a defendant takes the stand in a criminal case and exposes his demeanor to the jury, the jury may make adverse determinations about

his credibility and reject his explanation as a complete fabrication." *United States v. Vazquez*, 53 F.3d 1216, 1225 (11th Cir. 1995). "At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *United States v. Brown*, 53 F.3d 312, 314-15 (11th Cir. 1995). "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge . . . ." *Id.* at 315.

We have stated that, "[t]o convict a defendant for conspiracy under 21 U.S.C. § 846, the evidence must show (1) that a conspiracy existed, (2) that the defendant knew of it, and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994). "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and 'no distinction is to be made between the weight given to either direct or circumstantial evidence.'" *United States v. Mieres-Borges*, 919 F.2d 652, 656-57 (11th Cir. 1990) (citation omitted). "[A]n agreement to distribute drugs 'may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser.'"

*United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (citation omitted).

The evidence presented at trial was sufficient for the jury to find beyond a reasonable doubt that Worthen and Artis participated in a conspiracy to possess with the intent to distribute cocaine hydrochloride. Tutt, the Government's cooperating witness, testified he started selling cocaine to Worthen and Artis in August 2005 and had numerous dealings with them involving substantial amounts of cocaine. Once Tutt was cooperating with the Government, he contacted Worthen and Artis on multiple occasions regarding the sale of drugs to them. Some of the conversations that took place were played in open court. Those conversations involved a drug deal, which ultimately occurred on January 12, 2006. On that day, Worthen and Artis arrived with money and consummated a transaction involving approximately one kilogram of cocaine hydrochloride. The drug transaction was videotaped and was viewed by law enforcement, including Agent Ozden, through closed circuit television while it occurred. Agent Ozden testified regarding the phone calls between Tutt and Worthen, leading up to the drug transaction on January 12, 2006. Agent Ozden testified that he observed the drug transaction and saw Worthen and Artis enter Tutt's residence with money, which was given to Tutt in exchange for approximately one kilogram of cocaine.

8

Worthen and Artis cut, weighed, and repackaged the cocaine before leaving the residence. The videotape of the transaction and corresponding audio were introduced as evidence. Immediately after Worthen and Artis left Tutt's residence, law enforcement moved in to arrest them, and they both attempted to flee. They were apprehended shortly thereafter.

Agent Marbert of the DEA testified that the money used in the drug transaction did not include old bills, indicating that it had not been saved over a long period of time. He testified that a kilogram of cocaine contained approximately 1,000 doses and is an amount that would be purchased for the purpose of distribution, rather than for personal use. According to the DEA's expert in drug identification, Worthen and Artis purchased 994.8 grams of 78 percent pure cocaine hydrochloride from Tutt.

Additionally, Worthen testified in his own defense, and the jury was free to reject the testimony of Worthen as a fabrication and use it as substantive evidence of his guilt.[2] *See Brown*, 53 F.3d at 315. Portions of Worthen's testimony were consistent with a finding of guilt. For example, during cross-examination,

---

[2]Artis testified on his own behalf as well. However, unlike Worthen, Artis moved for judgment of acquittal after the Government's case in chief and the court reserved ruling at that point. Thus, our recent decision in *United States v. Moore*, __ F.3d __, 2007 WL 3121598 at *1 (11th Cir. Oct. 26, 2007) applies, and we review only the evidence from the Government's case in chief, which independently supports Artis's convictions in any event.

Worthen stated that he spent 40 minutes in the residence weighing the cocaine because he "wanted to make sure the deal was square." Worthen and Artis point out that no drugs were found on them and that Tutt provided all of the paraphernalia; nevertheless, the evidence adduced at trial was sufficient evidence for a jury to find beyond a reasonable doubt that Worthen and Artis conspired to possess cocaine hydrochloride with the intention of distributing it.

Moreover, sufficient evidence supported the jury finding the conspiracy to possess with intent to distribute cocaine charged in Count One involved more than five kilograms. First, the trial transcript in the record on appeal reflects that Tutt testified he sold Worthen and Artis "four whole kilograms," rather than four grams, in addition to other substantial quantities of cocaine that Tutt had sold to Worthen and Artis on numerous occasions.[3] Second, as noted by the Government, it is obvious from context that Tutt said four kilograms, rather than four grams. The transcript shows that Tutt testified that he sold Artis and Worthen "six to eight half kilos which is eighteen ounces and I sold them four whole kilograms." This was immediately followed by the question "Did that include the one from the FBI,"

_____

[3] Worthen does not cite any law to support his argument that we must consider the transcripts originally filed where the court reporter has filed amended transcripts to correct a typographical error. Additionally, Worthen does not deny that the original transcripts contained a typographical error or dispute the actual substance of Tutt's testimony at issue. Rather, he merely asserts the original trial transcript, which allegedly contained a typographical error materially affecting the amount of cocaine Tutt testified he had sold to Worthen and Artis, did not establish a conspiracy involving more than five kilograms of cocaine.

10

to which Tutt responded "Yes." Thus, Tutt testified that he sold Worthen and Artis four and a half ounces "a couple times," nine ounces "a couple of times," "six to eight half kilos which is eighteen ounces," and "four whole kilograms." Viewing this testimony in the light most favorable to the jury's verdict, Tutt's testimony established that he had sold Worthen and Artis an amount of cocaine the total weight of which exceeded five kilograms. Thus, the record shows there was sufficient evidence for the jury to find beyond a reasonable doubt that the conspiracy charged in Count One of the superceding indictment involved more than five kilograms of cocaine hydrochloride.

### III.

Finally, Worthen contends the evidence contained in the record does not support the district court's decision to instruct the jury that it could draw an inference of guilt from his flight. Worthen argues that an FBI agent had testified that Worthen "began running toward the woods," but Agent Marbert testified that Worthen was arrested inside Tutt's residence. Worthen argues that, in light of the record, the charge was highly prejudicial and amounts to reversible error.

Artis argues the record does not support giving a flight instruction because the evidence in the record indicated that he had run inside the residence when law

11

enforcement moved in to arrest him, he did not resist arrest, and he did not attempt to flee from the agents located inside the residence.

"Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." *United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992). The probative value of flight evidence is diminished if a significant amount of time lapses from the time of the crime's commission to the time of flight. *Id.* at 1000-01. The probative value of flight evidence "as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977).[4]

The district court did not abuse its discretion by instructing the jury that it could draw an inference of guilt from Artis's and Worthen's flight. *See United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007) ("Where an appellant has objected to a jury instruction at trial, we review the court's decision to use that

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

instruction for abuse of discretion."). Worthen essentially argues the instruction was improper as to him because there was both testimony that he fled into the woods and testimony that he was arrested inside the residence. First, irrespective of whether Worthen fled by running toward a wooded area or by running back inside Tutt's residence, he still fled. Second, as noted by the Government, Worthen himself testified that he fled by trying to run into a wooded area when law enforcement moved in to arrest him. Because Worthen admitted he attempted to flee when he spotted law enforcement outside of Tutt's residence, and this occurred immediately after he had purchased nearly a kilogram of cocaine, the district court did not abuse its discretion by giving the jury a flight instruction as to Worthen.

Similarly, with regard to Artis, Agent Ozden testified that when law enforcement moved in to arrest Worthen and Artis, Artis ran back inside Tutt's residence and was immediately apprehended. Just like Worthen, Artis's action of running occurred when law enforcement moved in to arrest him, and this was immediately after he had purchased nearly a kilogram of cocaine. Thus, because of the temporal proximity of the Artis's act of running back into the residence upon seeing law enforcement to his purchase of nearly a kilogram of cocaine, the district court did not abuse its discretion by giving a flight instruction with regard to Artis.

13

**IV.**

In conclusion, there was sufficient evidence for the jury to find Worthen and Artis guilty of both counts charged in the indictment, and that the conspiracy charged in Count One of the indictment involved more than five kilograms of cocaine. Additionally, the district court did not err by allowing rebuttal testimony concerning Worthen's proffer statement, and the evidence in this case supported the district court's decision to instruct the jury that it could draw an inference of guilt from flight.

**AFFIRMED.**