[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14155
Non-Argument Calendar

_____

D. C. Docket No. 06-00011-CR-WLS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN H. JOHNSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(March 21, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

John Johnson, Jr. appeals his conviction and sentence for misappropriation

by a fiduciary, in violation of 31 U.S.C. § 6101. Johnson was charged with misappropriating $14,922.53 in veterans benefits in his capacity as fiduciary for his father, John Johnson, Sr.

## I.

Johnson contends that the evidence was insufficient to support his conviction. According to him, the government showed only that he commingled the Veterans Affairs benefits with his personal funds, not that he misappropriated any specific funds over which he served as a fiduciary. Johnson also argues that he had no intent to misappropriate because he believed that he could compensate himself as a caregiver to his father.

We review de novo the sufficiency of the evidence supporting a criminal conviction. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). "[W]e must view the evidence in the light most favorable to the government and decide whether a reasonable juror could have reached a conclusion of guilt beyond a reasonable doubt." United States v. Faust, 456 F.3d 1342, 1345 (11th Cir.), cert. denied, 127 S. Ct. 615 (2006). "The jury is free to choose among alternative reasonable interpretations of the evidence . . . and the government's proof need not exclude every reasonable hypothesis of innocence." United States v. Tampas, 493 F.3d 1291, 1298 (11th Cir. 2007).

However, under Federal Rule of Criminal Procedure 29(b), "if the district court reserves ruling on a motion for judgment of acquittal, the court must decide the motion on the basis of the evidence at the time the ruling was reserved." United States v. Moore, 504 F.3d 1345, 1346 (11th Cir. 2007). The district court reserved ruling on Johnson's motion for judgment of acquittal, which was made at the close of the government's case, so our review is "limited to the evidence in the government's case in chief." Id. at 1347.

Section 6101 provides:

> Whoever, being a fiduciary . . . shall . . . embezzle or in any manner misappropriate any such money or property derived therefrom in whole or in part and coming into such fiduciary's control in any manner whatever in the execution of such fiduciary's trust, or under color of such fiduciary's office or service as such fiduciary, shall be fined in accordance with title 18, or imprisoned not more than five years, or both.

38 U.S.C. § 6101(a). "Any willful neglect or refusal to make and file proper accountings or reports concerning such money or property as required by law shall be taken to be sufficient evidence prima facie of such embezzlement or misappropriation." Id. § 6101(b).

The evidence, viewed in a light most favorable to the government, was sufficient to support Johnson's conviction. The government presented a sworn statement by Johnson where he admitted that he "knew [he] was supposed to use

3

the money for [his] father, but a gambling habit got in the way of good intentions." The government also introduced the fiduciary agreement Johnson signed, which instructed him that the VA benefits were to be used solely for the benefit of his father, and that he was required to provide an accounting of all funds received in his capacity of fiduciary upon request.

Ronald Pryor, a field examiner for the Veterans Administration, testified that he handled Johnson's appointment as his father's fiduciary. He told the jury that he had advised Johnson that he should set up a custodial account, maintain detailed records of the use of VA funds, and avoid writing checks to cash or commingling VA funds with other accounts. The government also presented the testimony of Daniel Goldberg, another field examiner for the VA, who visited Johnson approximately a year after he had become his father's fiduciary. Goldberg testified that Johnson informed him that "he used the veteran's funds for his own personal use." When Goldberg requested an accounting from Johnson, Johnson responded that he could not and would not provide an accounting of how the funds were spent.

The government introduced the bank records from the account Johnson set up to receive the VA benefits. The total amount of the VA deposits into the account was $14,922.53, and the statements revealed that this amount was

4

commingled with $21,563 in other deposits. A substantial amount of the money was withdrawn through checks made out to "cash" or to Johnson himself. In addition, a check for $700 was paid from the account to Johnson's ex-wife, and $2,400 was paid in electronic debits to an online gambling website. The government also called Kathy Hershey, a special agent with the Veterans Administration who was assigned to investigate Johnson's case. She testified that when Johnson was confronted with the bank records he could not account for what he had done with the money from the VA, but "[h]e pretty quickly admitted that he did not spend it on his father."

Johnson's refusal to provide an accounting to the Veterans Administration was prima facie evidence of embezzlement or misappropriation of the funds. 38 U.S.C. § 6101(b). Moreover, the government provided evidence through Johnson's written statement, as well as his admissions to Goldberg and Hershey, that Johnson knew that he had improperly spent the VA funds. Viewed in the light most favorable to the government, the government presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Johnson knew that the benefits were to be used solely for his father's benefit, but misappropriated the funds for his own personal use.

## II.

Johnson next contends that the district court erred by instructing the jury that his failure to make an accounting as required by law was prima facie evidence of misappropriation. According to Johnson, he was informed by the Veterans Administration that no accounting would be necessary when he assumed the role of fiduciary. Furthermore, Johnson argues that the court's instruction improperly shifted the burden to him to prove his innocence, which resulted in prejudice.

"Where an appellant has objected to a jury instruction at trial, we review the court's decision to use that instruction for abuse of discretion." United States v. Dean, 487 F.3d 840, 847 (11th Cir.), petition for cert. filed, No. 07-553 (U.S. Oct. 25, 2007). "If we are satisfied that the district court's instruction has not misstated the law or misled the jury, we give the district court 'wide discretion as to the style and wording employed in the instructions.'" Id. at 851 (quotation omitted). Moreover, as we mentioned above, section 6101(b) provides that a fiduciary's refusal to make an accounting of VA funds "shall be taken to be sufficient evidence prima facie of such embezzlement or misappropriation." 38 U.S.C. § 6101(b).

The court did not abuse its discretion in instructing the jury as to the applicable law on prima facie evidence of misappropriation. The court did not

misstate the law; it actually read section 6101(b) verbatim. The court also included a careful limiting instruction that the burden is never on the defendant to prove his innocence, but that the government must prove the defendant's guilt beyond a reasonable doubt. Johnson has not shown any error in the court's jury instructions, and we affirm his conviction.

### III.

Johnson contends that the district court violated his Sixth Amendment rights by enhancing his sentencing guidelines range based on facts that were neither found by the jury nor admitted by him. Specifically, Johnson objects to the district court's imposition of a two-level enhancement for abuse of position of trust, United States Sentencing Guidelines § 3B1.3 (Nov. 2006), a two-level enhancement for a vulnerable victim, U.S.S.G. § 3A1.1, and a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1. Johnson also objects to the district court's calculation of the amount of loss as $14,922.53, the total amount of the VA benefits disbursed, which resulted in a four-level increase of his offense level. U.S.S.G. § 2B1.1(b)(1)(C). He contends that the jury should determine the facts in support of each of these enhancements beyond a reasonable doubt.

We review de novo questions of law arising under the sentencing guidelines.

7

United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).  The Supreme

Court has provided that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must

be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New

Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63 (2000).  Furthermore, "the

Sixth Amendment right to trial by jury is violated where under a mandatory

guidelines system a sentence is increased because of an enhancement based on

facts found by the judge that were neither admitted by the defendant nor found by

the jury."  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

However, there is no error under Apprendi when the defendant is not sentenced

beyond the statutory maximum, and "district courts may still impose fact-based

sentencing enhancements under an advisory guidelines system without violating

the Sixth Amendment."  United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir.

2006).

Johnson was sentenced to 21 months imprisonment, which was below the

statutory maximum of 5 years.  The district court had the authority to enhance

Johnson's advisory guidelines range based on facts not found by a jury beyond a

reasonable doubt or admitted by him.  See Dudley, 463 F.3d at 1228.  As a result,

we conclude that Johnson suffered no Sixth Amendment violation in the

8

application of sentencing enhancements based on facts found by the district court.

**IV.**

Finally, Johnson contends that the district court erred in enhancing his guidelines offense level based on its finding that the amount of loss was equivalent to the total amount of disbursed VA funds, $14,922.53. He argues that after the jury found him guilty of misappropriation, the burden should not have shifted to him to establish the amount that he did not misappropriate out of the total amount that was disbursed. According to Johnson, he detailed the appropriate expenditures at sentencing, yet the court simply determined that there was an insufficient accounting to show that any of the proffered expenditures represented authorized uses of the VA funds.

"[T]he amount of loss determination at sentencing is reviewed for clear error." United States v. Medina, 485 F.3d 1291, 1297 (11th Cir. 2007). "The government must prove the attributable loss by a preponderance of the evidence." United States v. Dabbs, 134 F.3d 1071, 1081 (11th Cir. 1998) (analyzing the former § 2F1.1 loss provision). Section 2B1.1 of the guidelines, the applicable guideline for Johnson's offense, provides for a base offense level of six, as well as a four-level increase if the amount of loss exceeds $10,000. U.S.S.G. § 2B1.1(a)(2), (b)(1)(C). The application notes instruct that "loss is the greater of

actual loss or intended loss." Id. § 2B1.1 cmt. n.3(A). "The court need only make a reasonable estimate of the loss." Id. § 2B1.1 cmt. n.3(C). "A reasonable estimate of the loss amount is appropriate because often the amount of loss caused by fraud is difficult to determine accurately." Medina, 485 F.3d at 1304.

It is undisputed that Johnson received $14,922.53 in VA disbursements, and the government proved beyond a reasonable doubt that he misappropriated at least a substantial amount of those funds. Any determination of the actual loss was complicated, if not made impossible, by the fact that Johnson commingled the VA funds with his personal funds and failed to make an accounting or otherwise maintain records of how he spent the VA funds. The evidence presented at Johnson's sentence hearing failed to show that any of the actual VA funds were used on behalf of his father, so the court reasonably estimated that the amount of disbursed funds was equivalent to the amount of loss for the purposes of the guidelines. Johnson has not shown any error in his sentence.

**AFFIRMED.**