[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11625
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00071-EAK-MAP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH L. PASQUALE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 28, 2017)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Joseph Pasquale appeals his convictions for conspiracy to commit bank fraud, 18 U.S.C. § 1349, and substantive bank fraud, 18 U.S.C. § 1344. He argues that the government presented insufficient evidence about his knowledge of the bank fraud to sustain the jury's guilty verdict. He also argues that during its closing and rebuttal arguments, the government made improper assertions about his credibility and that of his trial counsel. Upon review of the record and consideration of the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Mr. Pasquale, a former real estate professional, was involved in a Florida "condominium conversion" project at the Arbors, an apartment complex in Tampa, Florida, that was selling units as individually-owned income properties. As part of this project, Mr. Pasquale created his own company to "lend" buyers—for a fee—the money they had to contribute to qualify for purchase-price mortgages on the condominiums. He collected reimbursement of the loans immediately after closing from a portion of the mortgages that were purportedly to be used to upgrade the condominiums (a "Design Upgrade Package," or "DUP"), but actually went to the buyers as cash.

2

This information was not disclosed to the banks that lent the buyers money to purchase the condominiums. The buyers' mortgage applications listed the condominiums as "second residences" instead of investment properties, which increased the available loan-to-value ratio for the units. Closing statements listed the money that the mortgage brokers had lent the buyers for closing as "cash" that the buyers were bringing to the table. The supporting documents for the DUP were never provided to the banks that lent the money for the DUP-increased mortgages.

Richard Higgins, a contract fraud investigator and former FBI agent, testified that he interviewed Mr. Pasquale (with his attorney present) as part of the FBI's investigation into the Arbors project. He testified that Mr. Pasquale admitted that he knew that the buyers at the Arbors had no intention of using their units as residences; that, to his understanding, the down payment loans from his company were not disclosed to the lenders; that he knew that at no time is it appropriate for a real estate agent to provide funding or loan money to clients; and that he "believed that he conducted fraud." D.E. 131 at 212.

Mr. Pasquale moved for judgment of acquittal at the close of the government's case-in-chief—at which time the district court reserved ruling—and again at the end of the trial. The jury found Mr. Pasquale guilty on all counts, and the district court denied Mr. Pasquale's motion for judgment of acquittal.

3

## II

We review the sufficiency of the evidence *de novo*. *See United States v. Pacchioli*, 718 F.3d 1294, 1299 (11th Cir. 2013). "On review, we must affirm if the evidence and the inferences it supports, viewed in the light most favorable to the government, would permit a reasonable trier of fact to establish guilt beyond a reasonable doubt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984). We consider the evidence "with all inferences and credibility choices drawn in the government's favor," and we "are bound by the jury's credibility choices, and by its rejection of the inferences raised by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1276–77 (11th Cir. 2012) (citation omitted). Importantly, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Harrell*, 737 F.2d at 979.

Under Fed. R. Crim. P. 29(b), if a district court reserves ruling on a motion for judgment of acquittal, the court must decide the motion on the basis of the evidence at the time the ruling was reserved. *See United States v. Moore*, 504 F.3d 1345, 1346 (11th Cir. 2007). Where, as here, the district court reserved ruling on a motion for a judgment of acquittal made after the government's case-in-chief, our review is limited to the evidence presented by the government. *See id.* at 1347.

To sustain a conviction for bank fraud conspiracy under 18 U.S.C. § 1349, the government must prove beyond a reasonable doubt that (1) two or more

4

persons agreed to a common and unlawful plan to commit bank fraud; (2) the defendant knew of the unlawful plan; and (3) the defendant knowingly and voluntarily joined in the plan. *See United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015). "To convict under § 1344(2), the government must prove [beyond a reasonable doubt] (1) that a scheme existed to obtain moneys, funds, or credit in the custody of a federally-insured bank by fraud; (2) that the defendant participated in the scheme by means of material false pretenses, representations or promises; and (3) that the defendant acted knowingly." *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).

Mr. Pasquale challenges only whether he acted "knowingly." Specifically, he argues that the government's case-in-chief did not establish that he knew the developer's incentives had not been disclosed to the lenders when the loans originated.

Viewing the evidence presented in the government's case-in-chief in the light most favorable to the verdict, the circumstances surrounding Mr. Pasquale's actions, his knowledge, experience, and familiarity with the mortgage process, and the nature of the "incentives" program that he offered to his clients permitted a jury to infer that Mr. Pasquale knowingly committed bank fraud. First, Mr. Pasquale's business partner, Brendan Bolger, testified that mortgage lenders would be disinclined to lend money to purchasers who did not use their own cash for down

payments, and Agent Higgins testified that Mr. Pasquale knew it was inappropriate for brokers to lend clients money for down payments. Second, some of the buyers testified that Mr. Pasquale made them aware of the Design Credit Agreement, which was designed in a manner to obfuscate its true purpose. Third, Agent Higgins testified that Mr. Pasquale admitted that he thought he committed fraud, and that he was aware that the information about "hard money loans" and the Design Credit Agreement was not provided to the mortgage lenders. Based on this evidence, it was reasonable for the jury to infer that Mr. Pasquale had knowledge that the incentives were not being disclosed to the mortgage lenders at the times the loans were applied for and obtained. Accordingly, sufficient evidence from the government's case-in-chief supports the jury's verdict.

### III

"We review allegations of prosecutorial misconduct *de novo* because it is a mixed question of law and fact." *United States v. Duran*, 596 F.3d 1283, 1299 (11th Cir. 2010). But where, as here, a defendant fails to raise an objection before the district court, we review only for plain error. To demonstrate plain error, an appellant must show that there was "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are satisfied, [we] may exercise [our] discretion to correct the error if (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings."

6

*United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (internal alterations and citation omitted).

Mr. Pasquale argues that the district court committed plain error in failing to strike or declare a mistrial *sua sponte* when the prosecutor argued that (in Mr. Pasquale's words) Mr. Pasquale "was a liar" and "questioned his [trial] counsel's ethics." *See* Br. of the Appellant at 26.

Prosecutorial misconduct may be shown where the prosecutor made improper comments that prejudicially affected the substantial rights of the defendant, meaning there is a reasonable probability that, but for the improper remark, the outcome of the trial would have been different. *See Duran*, 596 F.3d at 1299. A prosecutor may make a fair response to the arguments and issues raised by defense counsel. *See United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). To show that the prosecutor engaged in improper vouching, the defendant must demonstrate that the prosecutor either "placed the prestige of the government behind the witness" by making personal assurances of the witness' credibility, or "implicitly vouched for the witness'[ ] credibility by implying that evidence not formally presented to the jury supports the witness'[ ] testimony." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1218 (11th Cir. 2010). But improper vouching is not the same as arguing credibility, and a prosecutor is "permitted to comment on the credibility of [his] own witnesses without personally vouching for the

witness'[ ] credibility or bolstering the witness'[ ] credibility through the government's reputation." *United States v. Lopez*, 590 F.3d 1238, 1257 (11th Cir. 2009). And a prosecutor may make a fair response when the issue of the credibility of witnesses has been raised by defense counsel. *See id.* at 1258.

> During closing arguments, the prosecutor stated:
>
> First of all, I would like to just dispense with a quick issue. In the defense's opening you heard a number of things that the prosecution was not going to tell you.
>
> One of those was that Brendan Bolger owned the developments. I believe you heard through testimony here that two corporations owned the developments and Mr. Bolger did not. I believe you were told Mr. Bolger made millions and millions of dollars. I think if you go back, you can recall that Brendan Bolger stated he made $650,000.
>
> The reason you didn't hear any of this from us is because it didn't happen or it's factually inaccurate. The lawyers have an obligation— what we say is not evidence, but we have an obligation not to make stuff up either.

D.E. 132 at 187.

Mr. Pasquale argues that this statement was a personal attack on defense counsel by questioning his ethics. In context, however, this characterization is not necessarily accurate. The comments could instead explain that the government could not introduce evidence that does not exist. In other words, the prosecutor's statements are better read as a fair response to Mr. Pasquale's counsel's assertion in his opening statement that Mr. Bolger made millions from the developments. Although the argument may have had the ancillary effect of diminishing the

8

credibility of Mr. Pasquale's counsel, this was only because his counsel assumed such a risk by discussing facts during his opening statement that were not established. *See United States v. Calderon*, 127 F.3d 1314, 1336 (11th Cir. 1997) (concluding that closing argument in which a prosecutor accused defense counsel of misstating evidence, making a fictitious closing argument, and impugning the integrity of government witnesses did not rise to the level of prosecutorial misconduct).

During closing arguments, Mr. Pasquale's attorney stated: "[Y]ou heard FBI Agent Higgins come in here and disagree with what [Mr. Pasquale] had to say. How do you—how do you rectify that?" D.E. 132 at 206. He further argued that Agent Higgins was convinced that Mr. Pasquale was guilty and that "whether he heard what he wanted to hear or whether he added to it, I'll never know. None of us will. But he said what he said here today. But does that make sense if [Mr. Pasquale] knew he was part of this fraud to contact a lawyer to meet with the FBI to confess? Does that make sense? No." *Id.* at 206–07. During rebuttal argument the prosecutor contrasted Agent Higgins' and Mr. Pasquale's incentives to lie, stating that Agent Higgins had little incentive to manufacture his testimony, while Mr. Pasquale "to save himself [had] every reason to lie." *Id.* at 212–13.

Mr. Pasquale argues that, through these comments, the prosecutor called him a liar and vouched for Agent Higgins. But Mr. Pasquale's counsel put at issue the

9

credibility of his client versus the credibility of the law enforcement agent during his closing argument. The prosecutor made a proper argument in response as to the reasons Mr. Pasquale might lie versus the reasons the agent might lie. Moreover, the prosecutor did not vouch for the agent, but instead reviewed the available evidence about both individuals' circumstances and argued that the jury should make a credibility determination in the government's favor. *See Lopez*, 590 F.3d at 1257–58. Because the prosecutor's arguments were not clearly improper, we cannot say they amounted to plain error.

## IV

For the reasons stated above, the government presented sufficient evidence to support the jury's guilty verdict, and Mr. Pasquale has not demonstrated that the district court plainly erred by failing to *sua sponte* declare a mistrial based on comments made by the government during closing statements. Accordingly, Mr. Pasquale's convictions for conspiracy to commit bank fraud and substantive bank fraud are affirmed.

**AFFIRMED**.