[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13995

_____

D.C. Docket No. 6:19-cr-0027-RBD-LRH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAIMI HAWKINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 4, 2021)

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MARKS,[*]
District Judge.

MARKS, District Judge:

---

[*] Honorable Emily Coody Marks, Chief United States District Judge for the Middle District of
Alabama, sitting by designation.

Jaimi Hawkins ("Hawkins")[1] appeals her conviction for a violation of 18 U.S.C. § 641 through the theft of Supplemental Security Income (SSI) benefits, which she was awarded on behalf of her disabled son, C.H.  At the end of the government's case-in-chief Hawkins moved for judgment of acquittal pursuant to Rule 29 of the *Federal Rules of Criminal Procedure*.  The district court reserved ruling and ultimately denied her motion for judgment of acquittal.  For the reasons discussed below, we affirm.

## I.    BACKGROUND

In 2019, a federal grand jury indicted Hawkins on charges of theft of government funds, in violation of 18 U.S.C. § 641 (Count One), and making a false statement to a federal agency, in violation of 18 U.S.C. § 1001(a)(2) (Count Two).

In Count One, the indictment charged that Hawkins knowingly embezzled, stole, purloined, and converted more than $1,000 from the Social Security Administration (SSA) in SSI benefits.  In Count Two, the indictment charged that Hawkins falsely stated, in a Representative Payee Report that she had submitted to the SSA, that she spent $15,004 received from the SSA on behalf of C.H. between October 1, 2012 and June 26, 2014 on "clothing, education, medical and dental

---

[1] For clarity, the appellant Jaimi Hawkins is referred to in this opinion as Hawkins, while her ex-husband who is the father of her son, C.H., is referred to as Russell Hawkins.

2

expenses, recreation, or personal items for C.H.," when she had used some of those funds for her own personal expenses.[2]

At Hawkins' trial, the government presented testimony from a SSA claims representative that SSI is a government benefit available to disabled minors who have limited income and resources. Eligibility for benefits depends on parent income and "in-kind support and maintenance income," which includes bills that are paid by someone else. During the relevant time period, SSI applications were either completed in person at the SSA office or over the telephone, and they involved an interview component. For SSI benefits, the purpose of the application is to determine "primarily [the applicant's] living arrangement[s], who they live with," and, if the applicant is living with parents, then also his parents' income. When a child applies for benefits, the SSA requires a separate Representative Payee application from the person who will receive benefits on behalf of the child.

At issue in this case are Hawkins' claims for SSI benefits on behalf of her minor son, C.H., from July 2010 until July 2014. The 2010 benefits application which is the subject of the charges against Hawkins is not, however, the only application for benefits Hawkins made on C.H.'s behalf. Hawkins' first application for benefits for C.H. was denied in May 2006. At the time of the application, C.H.'s parents—Russell Hawkins and Jaimi Hawkins—were married, although separated,

---

[2] Hawkins does not appeal her conviction as to Count Two.

3

and had a shared bank account. A retired SSA claims representative, Vincent Betancourt, testified at trial that Hawkins' claim on C.H.'s behalf was denied in May 2006 because C.H.'s parents had too much income for C.H. to qualify. The notice of disapproved claim provided that "[t]he amount of SSI we pay depends on his living arrangements. His living arrangements are where he lives, with whom he lives, and how his food and shelter expenses are paid."

Hawkins next applied for benefits for C.H. in September 2006. At that point, she had primary custody of C.H. The application for benefits identifies a Winter Springs, Florida address. Louria Morales-Cates of the SSA testified for the government at trial that the application disclosed that Russell Hawkins paid many of C.H.'s expenses. Considering that support, the SSA determined that C.H. would be awarded $155.34 a month in benefits. The letter awarding benefits set out that C.H. was living "in his parents' household for August through March 2007" and that the amount of SSI depends on his living arrangements—"where he lives, with whom he lives, and how his food and shelter expenses are paid."

On November 6, 2008, Russell Hawkins was awarded primary custody of C.H. That day, he went to the local SSA office to inform the agency of the custody change. On November 19, he provided information to the SSA for the determination of C.H.'s continuing eligibility for SSI payments. Through the redetermination process, the SSA confirmed that C.H. began living with Russell Hawkins at the

4

Sanford, Florida address in November 2008. At trial, Morales-Cates testified that C.H.'s benefits subsequently were terminated as a result of the redetermination because of Russell Hawkins' income. The testimony presented by the government, however, also established that when Hawkins later was interviewed by the SSA, she recalled that she knew benefits had stopped in 2008, but she said she did not know why.

In 2010, Hawkins applied for SSI benefits for C.H. for the time period relevant to the charges at issue here, and applied to be the Representative Payee for C.H. Evidence at trial revealed that in August 2010, Hawkins represented that C.H. lived at the Winter Springs, Florida address in a household with herself and other minor children. The form disclosed that Russell Hawkins is Jaimi Hawkins' ex-husband and paid $1,500.00 in mortgage payments, but he had not made payments in a few years and the house was in foreclosure. The form provided notice that the claimant must report to the SSA if the claimant moved, if someone moved in or out of the household, and if the amount of help the claimant received from someone goes up or down, among other things. The form also disclosed that a minor child must ask his or her parents to report a change in income and if "either" has a change in residence. In applying for benefits, Hawkins stated to the SSA representative, "I am his mother. He lives with me. I take care of him." These remarks were included on the Representative Payee request form. The claim Representative Payee request

form disclosed that Hawkins has a responsibility to inform the SSA when the claimant's living arrangements changed. The form also disclosed that the claimant's attestation is made under penalty of perjury.

A September 30, 2010 letter from SSA informed Hawkins that the SSA awarded C.H. $449.34 a month in benefits. The letter stated that the amount of SSI depends on his living arrangements: where C.H. lives, with whom he lives, and how his food and shelter expenses are paid.

In January 2013, the SSA conducted a redetermination of continuing eligibility for benefits, during which review, Hawkins represented that as of July 2011 C.H. did not get any help or money from any person not living with him. The SSA awarded C.H. $710.00 a month in benefits starting January 2013 and provided backpay from October 2011 to December 2012. In January 2014, his monthly benefits went up to $721.00.

In a July 2014 Representative Payee report, Hawkins represented that none of C.H.'s SSI benefits were spent on food and housing, and that she spent $15,004 on things such as clothing, education, medical, and dental expenses. Hawkins had, however, used the SSI benefits to pay for rent and to pay a local college, not for C.H.'s clothing, education, medical, dental, recreation, and personal items. In a contemporaneous statement for the redetermination of C.H.'s continuing benefits

eligibility, Hawkins reported that Russell Hawkins paid $1,500.00 a month in bills for C.H. from June 2010 to July 2011 only.

In 2014, the case was submitted by Morales-Cates to the SSA's Office of Inspector General for fraud. (Doc. 110 at 68: 1-9). Morales-Cates testified at trial that she spoke with Russell Hawkins and determined that Russell Hawkins had primary custody of C.H. and that C.H. would have been ineligible for benefits due to Russell Hawkins' income.

In October 2014, Hawkins was interviewed by Special Agent Kareen Flax of the SSA Office of Inspector General. Hawkins told Flax that she recalled that Russell Hawkins told her to apply for benefits because he knew C.H. would not be eligible based on Russell Hawkins' income. Hawkins also told Flax that C.H. "essentially lived with his father," but he stayed with her on alternating weekends and on Tuesdays.

At trial, the jury was charged that to find Hawkins guilty, it had to find all of the following facts proved beyond a reasonable doubt: one, the money or property described in the Indictment belonged to the United States; two, the defendant embezzled, stole, or knowingly converted the money or property to her own use or to someone else's use; three, the defendant knowingly and willfully intended to deprive the United States of the use or benefit of the money or property; and, four, the money or property had a value greater than $1,000.

In its closing argument, the government argued that Hawkins knew she stole government funds as evidenced by her lies to the SSA.  Specifically, the government argued that Hawkins lied when she reported that C.H. lived with her and when she made representations about how much money and support he received from people outside of her household.

Hawkins was convicted on both counts and sentenced to concurrent terms of three years' probation as to each count.  She was also ordered to pay restitution.

## II.    STANDARD OF REVIEW

"When a defendant has challenged the sufficiency of the evidence by an appropriate motion for judgment of acquittal, we review *de novo* whether there was sufficient evidence to support a conviction."  *United States v. Jimenez*, 972 F.3d 1183, 1190 (11th Cir. 2020).  "We must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008). "In doing so, we view the evidence in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor."  *Id.*  The jury's verdict "cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Wilson*, 788 F.3d 1298, 1308 (11th Cir. 2015) (quotation and citation omitted).

8

Where, as here, the district court reserves ruling on a Rule 29 motion for judgment of acquittal made at the close of the government's case, we review "the sufficiency of the evidence only as it stood at the end of the government's case." *United States v. Moore*, 504 F.3d 1345, 1348 (11th Cir. 2007).

## III. DISCUSSION

For Hawkins to be convicted of theft of government funds under 18 U.S.C. 641, the government had to prove beyond a reasonable doubt "that (1) the money described in the indictment belonged to the United States or an agency thereof; (2) the defendant appropriated the property to [her] own use; and (3) the defendant did so knowingly with intent to deprive the government of the money." *United States v. Wilson*, 788 F.3d 1298, 1309 (11th Cir. 2015). At issue in this appeal of Hawkins' conviction as to Count One is the intent element; namely, whether the government established that Hawkins knowingly stole government funds.

This Court previously has addressed an issue of sufficiency of the evidence of intent under 18 U.S.C. § 641. *See Moore*, 504 F.3d at 1348. In *Moore*, we held that the district court erred in denying a Rule 29 motion of acquittal because the government failed to present evidence of "any knowledge that [the defendants] were not entitled to keep receiving" government benefits. *Id.* at 1349. The defense at trial was "that [the defendants] did not know, because no one ever told them," that their eligibility for veterans benefits ended with the death of the veteran's widow. *Id.* at

9

1348. We reasoned that because there was no evidence that the agency had notified the defendants of their ineligibility for benefits, or that they were required to notify the agency of the mother's death, the requisite knowledge could not be inferred from the fact that the defendants knew that they continued to receive benefit payments. *Id.* at 1349.

Hawkins relies on *Moore* to support her appeal, but that case is distinguishable and, therefore, not controlling here. There was evidence presented to the jury that Hawkins affirmatively sought out government benefits with notice that the SSA makes benefits determinations based on the minor-child's living arrangements and parents' income. Specifically, the 2010 claim form Hawkins submitted to secure benefits explained that she had reporting responsibilities including reporting changes in living situations, income received, and help received from others. The form also discloses that changes in the residence of "either" parent must be disclosed. The letter awarding benefits also included the same language which was contained in previous letters from the SSA to Hawkins during her dealings with the agency; namely, "[t]he amount of SSI we pay depends on his living arrangements. His living arrangements are where he lives, with whom he lives, and how his food and shelter expenses are paid."

Hawkins argues on appeal that because the SSA did not define what it means to "live with" one parent in the context of shared custody between parents in more

than one household, she lacked notice that her representation that C.H. lived with her was false. She further argues that the rule of lenity requires this Court to read "live with" in her favor. Hawkins' too-restrictive focus on "live with" as the determining factor for the SSA is misplaced, however, because the evidence at trial demonstrated that the consideration by the SSA is of the claimant's "living arrangements," which include where he lives, with whom he lives, and how his food and shelter expenses are paid. Furthermore, in 2010, the SSA informed Hawkins that there was a reporting requirement to report any changes to the help C.H. received, notifying Hawkins that Russell Hawkins' support of C.H. was relevant information to the SSA.

The evidence of notice to Hawkins that the SSA's benefits determination required a consideration of "living arrangements" both distinguishes this case from *Moore* and supports a determination by a reasonable jury beyond a reasonable doubt that Hawkins knowingly misrepresented C.H.'s living arrangements in order to obtain benefits. Because Hawkins had notice that when she represented that C.H. "lived with" her, she also should have disclosed that C.H.'s living arrangements included Russell Hawkins. Her failure to do so was a failure to fully disclose C.H.'s living arrangements under any definition of "live with."

Additionally, even though Hawkins had notice through the letters granting and denying benefits that the SSA considered income and support of the child's

11

parents in deciding the amount of benefits, Hawkins falsely represented that as of July 2011 C.H. "did not get help or money from any person not living with him or any agency to pay for food, rent . . ." on her January 12, 2013 form. A reasonable jury could find that misrepresentation to be evidence that she knowingly stole benefits. Even if Hawkins believed that C.H. "lived with" her, she knew, but did not disclose, that C.H. received resources from Russell Hawkins, who she represented C.H. did not "live with." Furthermore, a reasonable jury could infer guilty intent from the evidence that Hawkins' 2010 misrepresentations resulted in C.H. receiving $449.34 in benefits, which was substantially more than the $155.34, the amount he received in 2007 when she had reported that most of C.H.'s support came from Russell Hawkins. Evidence that the SSA awarded even higher benefits to C.H. after Hawkins' January 2013 misrepresentations strengthened the inference a reasonable jury could make that Hawkins knew she was stealing government funds.

Finally, although it supported the conviction under Count Two of the indictment, the evidence presented as to Hawkins' false statements to the SSA that she used the benefits for medical expenses, rather than rent, could also be considered by the jury as evidence of her consciousness of guilt as to Count One. *See United States v. Hughes*, 840 F.3d 1368, 1385 (11th Cir. 2016) (holding that a false statement made pre-trial may be considered as substantive evidence of the defendant's guilt).

After viewing the evidence presented at the time of the Rule 29 motion in a light most favorable to the government, we conclude that a reasonable jury could find beyond a reasonable doubt that Hawkins knowingly misrepresented C.H.'s living arrangements, including Russell Hawkins' support of C.H., in her submissions to the SSA in order to deprive the government of SSI monetary benefits.

## IV. CONCLUSION

We AFFIRM the district court's denial of Hawkins' Rule 29 motion for judgment of acquittal.